410 A.2d 793

**In re H. E. W.**

**Appeal of Sandra B. WILLIAMS.**

Supreme Court of Pennsylvania.

Submitted Sept. 25, 1979.

Decided Feb. 1, 1980.

638

John M. Cleland, Woods, Baker & Cleland, Kane, for appellant.

Richard W. Mutzabaugh, Bradford, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This is an appeal by the natural mother from the final decree entered in the Court of Common Pleas of McKean

County, Orphans' Court Division, ordering the involuntary termination of her parental rights in her minor child, H.E.W. Following entry of the decree nisi, appellant filed an exception, which was denied. The court entered a final decree terminating the parental rights of appellant and this appeal followed.

The facts are as follows. Appellant, Sandra Barber Williams, married Larry Shafer Williams on April 3, 1968. A child, H.E.W., was born to the couple on October 6, 1968. In October of 1973, while residing in Rochester, New York, appellant and her husband entered into a separation agreement, under the terms of which appellant was to retain custody of H.E.W. However, on November 3, 1973, at the request of appellant, the father, Larry Williams, took custody of the child. On April 13, 1974, Larry Williams died. Appellee Claudia Thoma is the sister of Larry Williams, and upon the death of her brother, and with the consent of appellant, the Thomas returned with H.E.W. to their home in Bradford, Pennsylvania, and retained custody of her there.

On October 31, 1974, the Thomas filed a petition for involuntary termination of parental rights in the Court of Common Pleas, Orphans' Court Division, of McKean County. The petition set out as grounds in support that appellant, since April 13, 1974 (the date of Larry Williams' death) "has evidenced a settled purpose of relinquishing her parental claim to [the] child and has refused and failed to perform her parental duties." A decree was entered by the trial court scheduling a hearing on the petition for November 26, 1974. On November 4, 1974, appellant, still residing in New York, was served by mail with a copy of the petition and decree.

On November 11, 1974, appellant went to Bradford, Pennsylvania, removed H.E.W. from school, and returned with her to New York. On November 26, 1974, the hearing on the Thomas' petition was held and a decree entered terminating appellant's parental rights and decreeing that she return the child to Mr. and Mrs. Thoma. Appellant neither

appeared at the hearing nor was she represented by counsel. On January 14, 1975, the Thomas went to New York, removed H.E.W. from school, and returned with her to Bradford, Pennsylvania.

On January 16, 1975, Mr. and Mrs. Thoma filed a petition for adoption of H.E.W., and the court entered a decree scheduling the adoption hearing for January 21, 1975.[1]

On February 4, 1975, appellant filed a "petition to open and vacate judgment," and on March 12, 1976, following a hearing, the court entered a decree which "opened and vacated" its November 26, 1974, decree and which directed that appellant be given an opportunity to present testimony to establish why her parental rights should not be terminated. On July 22, 1976, a new hearing was held on the Thomas' petition at which appellant appeared, was represented, and testified. On May 26, 1977, the court entered a decree terminating appellant's parental rights in H.E.W. In its opinion in support of its decree the Orphans' Court noted that on the facts of the case it *would not hold that there had been an abandonment and would return the child to the mother,* but held that appellant's "petition to open and vacate" was in the nature of an appeal, was untimely filed, and hence was without effect as a challenge to the propriety of the November 26, 1974 decree.

Appellant now advances two arguments: first, that the decree which "opened and vacated" the original decree rendered that first decree a nullity and deprived the Orphans' Court of power to reinstate it; second, that the ruling that appellant's "petition to open and vacate" was untimely filed represented a clear abuse of discretion. Appellee, on the other hand, argues these issues have not been properly preserved for appellate review.

Certainly there is support in the record of the instant case for a conclusion that appellant has waived her claims of error. On advice of her New York counsel, appellant failed to appear at the original November 26, 1974, hearing. Fol-

1. There is nothing in the record before us to indicate whether the adoption hearing so ordered was ever held.

lowing the entry of the decree pursuant to that hearing, and again apparently upon counsel's recommendation, appellant permitted the time for the filing of exceptions and the taking of an appeal to expire without doing either. Subsequently, by her new Pennsylvania counsel, she filed a "petition to open and vacate," despite the fact that these are contradictory remedies urging distinct defects in the proceedings. See *In re Estate of McCauley*, 478 Pa. 83, 385 A.2d 1324 (1978).[2] Finally, upon entry of the second (May 26, 1977) decree, appellant entered merely a general exception asserting neither of the claims of error which she advances here. In this procedural setting, we could find appellant has waived those claims.

■ It is of course true that our scope of review in involuntary termination of parental rights cases is narrowly circumscribed: was the decree supported by competent evidence. *See, e. g., In re: William L.*, 477 Pa. 322, 383 A.2d 1228 (1978). It is also true that "this Court has frequently acknowledged the severity of the emotional impact which attends a court decree terminating against the wishes of a natural father or mother, his or her parental rights in a child." *In re Howard*, 468 Pa. 71, 75, 76, 360 A.2d 184, 186 (1976). "Before parental rights may be involuntarily terminated, the proponent of the termination must establish by a preponderance of the evidence that the demanding requirements of § 311 [of the Act] are present." *Id.*

Central to our role, then, as a reviewing court, is a *finding* by the court of first instance that the "demanding requirements" of the act have been met. It is this finding which we, within narrow circumscription, review.

The Act[3] provides, in pertinent part, that:

"The rights of a parent in regard to a child may be terminated after a petition filed . . . and a hearing held . . . , on the ground that:

**2.** It is of course true that a party may seek alternative remedies, as in filing a petition to open *or* vacate.

**3.** Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311, 1 P.S. § 311 (Supp.1979).

"(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties . . .".

The only finding of fact made in the instant case is that made, properly, by the Orphans' Court. That court held that on the facts it "would not hold that there had been an abandonment and would return the child to the mother." Indeed, our review of the record convinces us that a contrary finding would have been unsupported by the evidence. Notwithstanding the court's finding of fact, as a result of procedural errors by appellant a decree was nevertheless entered terminating her parental rights.

Both our rules, Pa.R.A.P. 105(a), and the Rules of Civil Procedure, Pa.R.C.P. 126, provide for the liberal construction and application of rules. Rule 105 of the Rules of Appellate Procedure authorizes the waiver and modification of rules "to secure the just, speedy and inexpensive determination of every matter to which they are applicable." Pa.R.A.P. 105(a). Although it may be that we should not blithely undertake to waive our rules, it is difficult to imagine a case where "the just . . . determination of [the] matter" more urgently begs for such waiver.

The only factual determination made, or which could have been made, on the merits of this case is one which holds appellant should not be deprived of her rights to her child. To nevertheless decree otherwise is anomalous. We refuse to undertake, in this unusual case, to permit injustice to be done in the name of form.

The decree of the Orphans' Court is vacated. The case is remanded to the Orphans' Court to proceed *ab initio* on appellees' petition to terminate parental rights. The parties there, if they so choose, may proceed in conformity with Rules 1518–1519, Pa.R.C.P.

Each party to pay own costs.

MANDERINO, J., did not participate in the decision of this case.

ROBERTS, J., files a dissenting opinion.

ROBERTS, Justice, dissenting.

On November 26, 1974, the Court of Common Pleas of McKean County, Orphans' Court Division ordered the involuntary termination of the parental rights of appellant Sandra B. Williams over H.E.W. Although appellant was notified of the proceedings and the resulting decree, she failed to appear at the hearing, and did not file timely exceptions or a timely appeal. The majority holds that this final decree of termination may now be opened by appellant. I must dissent.

It is well established that a natural parent may not open a final decree of termination unless the natural parent's failure to oppose termination resulted from excusable neglect. *In re Adoption of R. H.*, 485 Pa. 157, 401 A.2d 341 (1979); see Restatement (Second) of Judgments § 115 (Tentative Draft No. 6, February 10, 1979). This requirement is especially important when, as here, prospective parents have already petitioned to adopt. *In re Adoption of R. H.*, supra. Such a requirement is not based, as might be inferred from the majority opinion, upon blind compliance with procedural rules. Rather,

> "[p]rospective parents who have . . . initiated petitions to adopt, after natural parents have failed to appeal decrees of termination, are fully justified in relying upon the finality of the decrees. Upon entry of a final decree of termination, the prospective parent 'shall stand in loco parentis to the child and in such capacity shall have the authority, inter alia, to consent to marriage, to enlistment in the armed forces and to major medical, psychiatric and surgical treatment, and to exercise such other authority concerning the child as a natural parent could exercise.' Adoption Act of 1970, § 321."

*In re Adoption of R. H.*, 485 Pa. at 161–62, 401 A.2d at 344; see *Chambers Appeal*, 452 Pa. 149, 154, 305 A.2d 360, 363

(1973) ("[I]t would be cruel and unfair to subject the pro-spective adopting parents to the risk of a change of mind by the natural parents. . . . with resulting heartbreaks to several persons and possible harm to the child.' ") (quotation omitted).

Appellant alleges that she failed to oppose the petition for involuntary termination at the appropriate time because both she and her attorney believed that Pennsylvania courts lacked jurisdiction over her while she and H.E.W. were in New York.* Such allegations are obviously an impermissible justification for her failure to appear at the termination proceeding. To permit appellant to open a final decree of termination on this basis would severely undermine the notion of final decrees in an area where "finality" is of such fundamental importance. Accordingly, I would affirm the final decree of the orphans' court reinstating its previous decree of final termination.

---

* The orphans' court found that H.E.W. was in New York only because appellant came to Pennsylvania and "forcibly took custody of the youngster while on her way home from school" in violation of the orphans' court custody order.