529 A.2d 33

**INSURANCE COMPANY OF NORTH AMERICA**

v.

**Connie L. BISHOP, Guardian of the Estate of Clyde Bishop, Defendant and Teamsters Local No. 429 Health and Welfare Fund.**

**Appeal of TEAMSTERS LOCAL NO. 429 HEALTH AND WELFARE FUND.**

Superior Court of Pennsylvania.

Argued June 11, 1987.

Filed Aug. 3, 1987.

George F. Douglas, Jr., Carlisle, for appellant.

David Schwalm, Harrisburg, for Insurance Co. of N.A., appellee.

Before CIRILLO, President Judge, and OLSZEWSKI and HESTER, JJ.

HESTER, Judge:

This appeal followed the trial court's refusal to open a summary judgment. We conclude that appellant has failed to allege sufficient grounds to warrant opening the judgment, and affirm.

Clyde Bishop was seriously injured on October 19, 1978, when the vehicle he owned and was operating collided with a tractor-trailer owned by Hall's Motor Transit Company and operated by one of its drivers. Bishop, in violation of the former Pennsylvania No-fault Motor Vehicle Insurance Act[1] (the "Act"), was uninsured. On April 23, 1979, his wife, as his guardian, applied for benefits under the Assigned Claims Plan of the Act. The claim was assigned to the Insurance Company of North America ("INA"). Between the date of the accident and the date INA began paying benefits, Bishop's medical expenses of $66,741.27 were paid by the Teamsters Local No. 429 Health and Welfare Fund (the "Fund") under a group policy for union members.

Bishop subsequently received a structured settlement in excess of $250,000 in a tort action instituted by his guardian against Hall's Motor Transit Company and its driver. Pursuant to section 501 of the Act,[2] INA then filed suit against

1. Act of July 19, 1974, P.L. 489, No. 176, Art. 1, Sec. 108, 40 P.S. § 1009.108, *repealed by* Act of February 12, 1984, P.L. 26, No. 11, Sec. 8(a), effective October 1, 1984.

2. § 1009.501 **Uninsured motorists**

The obligor obligated to pay basic loss benefits for accidental bodily injury to a person occupying a motor vehicle, the owner of which is uninsured pursuant to this act or to the spouse or relative resident in the household of the owner or registrant of such motor vehicle, shall be entitled to recover all the benefits paid and appropriate loss or adjustments costs incurred from the owner or registrant of such motor vehicle or from his estate. The failure of the person to make payment within thirty days shall be grounds for

Bishop's guardian for reimbursement of the $41,359 in no-fault benefits previously paid to Bishop. The guardian joined the Fund as an additional defendant claiming that, if INA was entitled to reimbursement for benefits paid, the payment should be made by the Fund pursuant to its insurance policy for union members. The Fund filed a counterclaim against INA seeking reimbursement of the $66,741.27 which it paid before INA began making payments. Cross-motions for summary judgment were filed by the parties.

On September 11, 1981, President Judge Quigley of the Perry County Court of Common Pleas ruled that INA had a right to be reimbursed by Bishop, the owner-operator of the uninsured vehicle, but not from the proceeds of Bishop's recovery against the third party tortfeasor for non-economic detriment not covered by no-fault.

He next addressed the issue as to which of the two insurers, INA or the Fund, would be primarily liable for the benefits they had respectively paid to Bishop as a result of the accident. He decided that INA was secondarily liable, despite the fact that the Fund's policy which insured Bishop excluded coverage for "services paid or payable by any other insurance carrier." INA successfully argued that the assigned claims provision in the Act was only operative if no other insurance was available and that the Fund provided such insurance. The judge reasoned that the escape clause in the Fund's policy was not effective against INA in this situation, as benefits provided pursuant to the Act should be viewed as excess or secondary insurance under the Act. He observed,

> First, the Act itself indicates that benefits paid under an assigned claim are to be secondary to other benefits received and receivable by the victim. 40 P.S. § 1009.-108(a)(3). More importantly, to find this coverage to be primary would violate the purpose of the No-fault Act

suspension or revocation of his motor vehicle registration and operator's license.
Act of July 19, 1974, P.L. 489, No. 176, Art. V, Sec. 501, 40 P.S. § 1009.501 (repealed 1984).

requiring insurance for all motor vehicles required to be registered in Pennsylvania. In fact, it would have the effect of encouraging owners not to provide the required security on their vehicles, knowing that they would be covered under the assigned claims plan.

The Teamster's Fund was an already existing insurance provider responsible for medical expenses incurred by Bishop. INA was merely an assigned no-fault carrier. Insurance companies and their insureds who regularly pay premiums for their no-fault coverage should not have to bear the burden of supporting an assigned claim when the uninsured owner and victim had other available insurance to pay the expenses he incurred as a result of the accident.

Trial court opinion, 9/11/81, at 18.

On November 9, 1981, following reargument, final judgment was entered in favor of INA against the Fund in the amount of $41,359.00; in favor of the guardian against the Fund in the amount of $66,741.27, with payments to continue until the policy obligations were exhausted; and in favor of INA against the guardian in the amount of $41,359.00, with recovery limited to the assets of the estate other than the proceeds of the settlement in the tort action against Hall's Motor Transit Company.

On appeal, this court affirmed the trial court judgment in a memorandum opinion filed April 29, 1983. On October 4, 1983, the Supreme Court of Pennsylvania denied the Fund's petition for allowance of appeal, but granted INA's cross petition for allowance of appeal which sought review of that portion of the judgment that had denied reimbursement from Bishop's settlement proceeds. The appeal by INA was discontinued on October 21, 1983.

The Fund filed a petition to open judgment on June 30, 1984, setting forth the following allegations:

1. When on September 9, 1981, judgment was entered by the Court in favor of the Insurance Company of North America, hereinafter called "INA", and against Teamsters Local No. 429, Health and Welfare Fund, herein-

after called "Teamsters", it was the belief of this writer, and we believe the Court, that the $41,359.00 was for hospital and doctor bills.

2. Admittedly, INA continued to make payments on behalf of Clarence Bishop, so that by the time that Teamsters' Petition for Allowance of an Appeal to the Supreme Court was denied, INA had paid out a total of $53,153.54 on Bishop's behalf.

3. When INA complied with this writer's request on November 9, 1983, by supplying a breakdown of their $53,253.54 in payments, it was discovered by Teamsters that these payments were for wage loss and nursing home care, neither of which are due from Teamsters to their members under their major medical plan.

On September 4, 1986, Judge Quigley denied the motion to open judgment. This appeal by the Fund followed.

The Fund argues that the $53,153.54 judgment in favor of INA should be opened as that amount represents payment for nursing home and work loss not covered by its policy. Citing authorities that discuss opening of default judgments, it relies primarily on the "equitable considerations" involved in making it pay for expenses not covered by the terms of the policy.

 Appellant's reliance on this authority is misplaced. The judgment in the present case was not entered by default or by confession pursuant to warrant of attorney. It was a judgment entered in a contested proceeding pursuant to court order following cross-motions for summary judgment. The law applicable to opening judgments not entered by confession or default is clear:

"Unlike a judgment entered by confession or by default, which remains within the control of the court indefinitely and may be opened or vacated at any time upon proper cause shown, a judgment entered in an adverse proceeding ordinarily cannot be disturbed after it has become final." A judgment entered in adverse proceedings becomes final if no appeal therefrom is filed within thirty days. See: 42 Pa.C.S. § 5505. Thereafter,

the judgment cannot normally be modified, rescinded or vacated. Similarly, it cannot be "opened."

"This doctrine, respecting judgments entered in adverse proceedings, has a very definite function, namely, to establish a point at which litigants, counsel and courts ordinarily may regard contested lawsuits as being at an end. A contested action yields a judgment in which the value of finality is greatest. There has been a decision following an examination of the critical issues through bilateral participation of the parties. For all the reasons that finality of judgments is important, such a judgment should be invulnerable except upon a showing of *extraordinary miscarriage*."

. . . .

Although the inability of a court to grant relief from a judgment entered in a contested action after the appeal period has expired is not absolute, the discretionary power of the court over such judgments is very limited. Generally, judgments regularly entered in adverse proceedings cannot be opened or vacated after they have become final, unless there has been *fraud or some other circumstance "so grave or compelling as to constitute 'extraordinary cause' justifying intervention by the court."*

*Simpson v. Allstate Insurance Co.,* 350 Pa.Super. 239, 243–45, 504 A.2d 335, 337 (1986) (en banc) (citations and footnote omitted) (emphasis added); *accord Luckenbaugh v. Shearer,* 362 Pa.Super. 9, 523 A.2d 399 (1987).

■ The judgment in this case was final before the petition to open was filed. The Fund's mistaken belief about the nature of INA's payments was not fraudulently created by INA, nor does it constitute a grave or compelling circumstance justifying a disturbance of the finality of this judgment. A "mistake of fact" simply is not an extraordinary cause warranting our intervention, especially since the Fund was on notice that benefits payable under the Act covered more than medical expenses. It could easily have ascertained the type of benefits INA had paid during the

trial court proceedings. Although not necessary to our ruling, we are also persuaded by INA's assertion that it relied on the judgment in its favor when it discontinued its appeal of the portion of the judgment denying reimbursement from Bishop's settlement proceeds.

Order affirmed.