535 A.2d 634

**In re In the Interest of C.K.**

**Appeal of C.K. and L.K. Natural Parents.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1987.

Filed Dec. 30, 1987.

Jack E. Reagle, Northwestern Legal Services, Coudersport, for appellants.

Before BECK, JOHNSON and HESTER, JJ.

BECK, Judge:

This is an appeal from the trial court's denial of appellants' Petition to File a Notice of Appeal Nunc Pro Tunc.

Appellants are natural parents whose parental rights were terminated by a final order of the Court of Common Pleas of Potter County entered on January 22, 1987. Appellants failed to appeal this order within the thirty day

appeal period. Shortly after the expiration of the appeal period, counsel for appellants filed a Motion to File Appeal Nunc Pro Tunc in this Court. We issued a Per Curiam Order denying the Motion on March 20, 1987. Our Order stated that the Motion was denied without prejudice to appellants' right to seek relief in the trial court and cited *In Re Adoption of J.A.S.*, 330 Pa.Super. 151, 479 A.2d 8 (1984).[1]

Counsel for appellants then filed a Petition to File a Notice of Appeal Nunc Pro Tunc in the trial court. The Petition stated that the reason why a timely appeal had not been filed was that appellants' counsel's mother had suffered a massive myocardial infarction approximately three weeks after the entry of the January 22, 1987 Order. Counsel alleged that he was required to be out of his office and at his mother's side for two weeks thereafter, during which time the appeal period expired.

The trial court conducted a hearing on the Petition on April 14, 1987. At the hearing, counsel alleged that he did not learn of appellants' desire to appeal from the Order until he called his office on February 26, 1987, at which time he was informed that on February 19th, appellants had called counsel's office and told his secretary that they wished to appeal. By this time, the appeal period had already expired. Appellee, Potter County Children and Youth Services, concedes that these are the reasons for appellants' failure to file a timely appeal.

On May 6, 1987 the trial court entered a Memorandum Opinion and Order denying appellants' Petition. Appellants now appeal from the May 6, 1987 Order.

---

1. *In re Adoption of J.A.S.* was an appeal from a trial court denial of a petition to appeal nunc pro tunc by a natural mother from an order terminating her parental rights. The court held that since her petition to appeal nunc pro tunc alleged facts which, if proven, would justify allowing the appeal, the matter should be remanded for a fact finding hearing. Perhaps because of this court's citation to *J.A.S.* in our Per Curiam Order, the trial court in the instant case held a hearing on appellants' Petition on April 14, 1987.

This case presents us with an unusual difficulty. We are often called upon to decide matters where the facts at hand are complex and difficult to fit within existing legal principles, or where the facts are straightforward but the existing law has not yet developed to the point of providing us with an answer to the issue posed. However, we are quite infrequently called upon to address a case such as this, where the facts are simple and the difficulty in resolution is the presence of too much precedent, all of which is potentially analogous, much of which is conflicting and none of which is particularly clear.

The question presented is whether, where an appeal from a trial court's order is not timely filed because of the unexcused conduct of appellants' counsel, an appeal nunc pro tunc should be allowed.

We find it beyond question that here, appellants' counsel was not attendant to his professional duties. Counsel was absent from his office for a period of several weeks, knowing that if appellants wished to appeal from the termination of their parental rights, they would have to do so during counsel's absence. Yet counsel did not provide for the clear possibility that appellants *would* want to appeal. He did not arrange for substitute counsel to monitor his cases. He did not notify appellants that they should seek new appellate counsel.

Realizing that counsel's inaction resulted in appellants' failure to appeal timely, we now turn to a close analysis of the precedents that define the circumstances under which an appeal nunc pro tunc can be allowed. As the Supreme Court has so many times opined, the time for taking an appeal cannot be extended as a matter of mere indulgence. An extension of such time can be permitted only in those cases where there has been fraud or some breakdown in the court's operation. *West Penn Power Co. v. Goddard*, 460 Pa. 551, 333 A.2d 909 (1975); *Nixon v. Nixon*, 329 Pa. 256, 198 A. 154 (1938).

When initially coined, this statement of the applicable standard could hardly have been clearer or more easily

applied. Moreover, the restrictiveness of the standard is grounded in solid legal principles. Since the Judicial Code itself addresses the time limitation for the taking of an appeal, courts have construed the thirty-day appeal limit as a legislative determination that the finality of court adjudications must be promoted by limiting the time within which they can be questioned on appeal. *See Bass v. Commonwealth*, 485 Pa. 256, 266, 401 A.2d 1133, 1138 (1979) (Roberts, J., dissenting to denial of reargument); 42 Pa.Cons. Stat.Ann. §§ 1722, 5501(a), 5504, 5571 (1982). Indeed, appellate courts regard the time limit on appeals as constituting an actual limit on their jurisdiction. *Murphy v. Brong*, 321 Pa.Super. 340, 468 A.2d 509 (1983) (untimely appeals present a jurisdictional question and must be quashed); *Commonwealth v. Riebow*, 299 Pa.Super. 458, 445 A.2d 1219 (1982); Pa.R.App.P. 105(b) (appellate court may not enlarge time for taking of appeal).

Despite these considerations supporting the establishment and maintenance of a restrictive and clear standard for the allowance of appeals nunc pro tunc, in 1979 the Supreme Court created a new species of circumstances in which such an appeal would be allowed. In *Bass v. Commonwealth, supra* [2], counsel for appellants prepared appeal

---

**2.** The concurrence questions the precedential status of *Bass,* apparently because only five members of the Supreme Court participated in the decision and because of those five, only two justices joined the lead opinion, one justice concurred and two justices dissented. We are not aware of any other court that has raised this question regarding *Bass* in the eight years since the decision was rendered. In our view, there is no question that Bass represents the view of the majority of the justices who participated in the decision and is, therefore, precedential. The fact that only five justices participated in the decision is not relevant in that our Supreme Court has held that where five justices participate, the majority view of those justices becomes binding precedent on the courts of Pennsylvania. *Commonwealth v. Mason,* 456 Pa. 602, 604, 322 A.2d 357, 358 (1974).

Moreover, it is clear that Justice Nix's concurrence in *Bass* expresses his agreement with both the result and the reasoning of the lead opinion and constitutes only an *additional* statement of reasoning in support of the lead opinion and in opposition to the dissent. Indeed, in the legal context of *Bass,* if Justice Nix had not concurred in the lead opinion's reasoning, he could not have joined in that opinion's

papers and apparently gave them to the secretary in his office for filing. However, the secretary, who was also in charge of monitoring the work of secretaries who might be absent from the office, became ill and did not return to work until very shortly after the appeal period had expired. A petition to appeal nunc pro tunc was then filed four days after the appeal period had expired. *Id.*, 485 Pa. at 258, 401 A.2d at 1134. The *Bass* Court, while recognizing the traditional standard for appeals nunc pro tunc set forth above, nevertheless allowed the appeal. We set forth its analysis verbatim, because of its particular importance in the context of the instant case:

> Appellant argues that we should equate the failure to file a timely appeal in this case as 'in fact a negligent act of a court official.' Appellant also argues that 'mere inadvertence' should not prevent appellant from access to the appellate process. It is true that in our system of law an attorney, in a sense, serves both as an advocate for his client and as an officer of the court. It has recently been recognized by statutory law that an attorney is a public officer.... We are unable to conclude, however, that the office of attorney is to be equated for all purposes with the term 'court officer'. We cannot overlook the fact, however, that an attorney at law, chosen by a client from a limited group of people legally entitled to represent the client, is an integral part of our system of justice. To view a citizen's attorney as a completely non-public officer would be ignoring the reality that our system of justice could not function properly and efficiently without the traditional view that an attorney not only represents a client, but is in a sense an officer of the court. Therefore, at least in those circumstances involving the non-negligent failure to file an appeal, members of the public should not lose their day in court. Without doubt the

disposition of the case. *See Commonwealth v. Scott,* 279 Pa.Super. 8, 11, 420 A.2d 717, 719 (1980).

Thus, although we agree with the concurrence's expression of dissatisfaction with the *Bass* decision, we have no choice but to regard it as a binding expression of the Supreme Court's views.

passage of any but the briefest period of time during which an appeal is not timely filed would make it most difficult to arrive at a conclusion that the failure to file was non-negligent.

. . . . .

Although there are some exceptions, ordinarily non-negligent conduct, although it results in injury to another is not actionable. This principle can be illustrated by assuming that an attorney, while on his way to the Prothonotary's Office to file an appeal has an unexpected heart attack or other illness which causes him to lose control of his vehicle, and injure a bystander. The attorney (or any other person) would not be held liable.... Just as the attorney would not be held liable for damages to the bystander resulting from his non-negligent driving, his client should not suffer because the attorney, as a result of his illness, was unable to file the appeal. The example we have given is akin to the case before us.

*Id.*, 485 Pa. at 260, 401 A.2d at 1135.

Thus, the *Bass* Court appeared to create a new ground for an appeal nunc pro tunc, i.e. non-negligent happenstance. Moreover, as the above-quoted language indicates, the *Bass* Court attempted to fit this ground within the traditional ground for the allowance of an appeal nunc pro tunc where there has been a breakdown in the operations of the court. The Court did so by viewing attorneys as officers of the court for some purposes and by analogizing an attorney's non-negligent failure to file timely to a situation where the judicial system has broken down.

Although the Supreme Court has recently cited to *Bass* without discussing it, *Commonwealth v. Revtai*, 516 Pa. 53, 532 A.2d 1 (1987), the Court has not otherwise commented on *Bass* and we are, therefore, unable to determine how that Court would now construe the decision's scope. Our intermediate appellate courts have somewhat differed in their application of *Bass*. While this Court has been quite restrictive in its application, *Moring v. Dunne*, 342 Pa.Super. 414, 493 A.2d 89 (1985) (death of appellant's attorney

does not constitute non-negligent happenstance), the Commonwealth Court has fairly frequently applied it. *See, e.g., Perry v. Unemployment Comp. Bd. of Rev.*, 74 Pa. Commw. 388, 459 A.2d 1342 (1983) (mechanical failure of law clerk's car is non-negligent happenstance); *Walker v. Unemployment Comp. Bd. of Rev.*, 75 Pa.Commw. 116, 461 A.2d 346 (1983) (failure of post office to forward notice of referee's decision is non-negligent happenstance). Recently, however, the Commonwealth Court has appeared to adopt a view of *Bass* which is more consistent with the restrictive view of this Court. *See Guat Gnoh Ho v. Unemp. Comp. Board*, 106 Pa.Commw. 154, 525 A.2d 874 (1987) (*Bass* line of cases are limited to unique and compelling facts presented therein).

In the instant case, there is no allegation that appellants' failure to file their appeal timely resulted from either fraud or a breakdown in the court's operations as traditionally defined. Thus, if we are to reverse the trial court's refusal to grant appellants permission to file an appeal nunc pro tunc based on the precedent discussed thus far, it would appear that we must do so by finding that the circumstances of this case fall within the *Bass* non-negligent happenstance ground for an appeal nunc pro tunc.

In contrast, appellee argues that we need not determine the scope and applicability of *Bass*. Appellee argues that the decision of the Supreme Court in *In re Vacation of Portion of Dorney Park Road*, 503 Pa. 67, 468 A.2d 462 (1983) established that *Bass* is no longer to be regarded as part of the law of the Commonwealth. Thus, appellee contends that our inquiry must end when we determine that there was no fraud or breakdown in court operations as traditionally defined and that we must, therefore, affirm.

We disagree with appellee's appraisal of the impact of *Dorney Park* on *Bass*. In *Dorney Park*, the Supreme Court reviewed the action of a trial court in refusing to allow appellees to file late exceptions and a petition for review of an engineer's report filed in the Court of Common Pleas. The report was filed in support of the township

commissioners' decision to vacate a portion of a public road. The controlling statute involved was the First Class Township Code, Pa.Stat.Ann. tit. 50 § 57009. Under the Code, after the commissioners caused the filing of the engineer's report, interested parties had the right to file exceptions to and a petition for review of the report within a set period of time. The appellees failed to file on time because their attorney had asked a court official to notify him when the report was filed so that he could file appellees' exceptions and petition for review. Although the official agreed to do so, he did not, with the result that appellees' filing was eleven days late. *Id.*, 503 Pa. at 70, 468 A.2d at 463.

The *Dorney* Court agreed with the trial court's decision that the appellees could not be permitted to file late because the court lacked jurisdiction to expand the statutory time for review in the absence of fraud or breakdown of court operations. In support of this conclusion, the *Dorney* Court cited several decisions, all of which pre-date *Bass*, but made no mention of *Bass* itself.

Because of this statement in the *Dorney* decision, appellee concludes that the *Bass* "non-negligent happenstance" ground for the late filing of an appeal no longer exists. We, on the other hand, are loath to find that the Supreme Court has *sub silentio* overruled one of its prior decisions without something more. We are particularly hesitant to do so here, since *Dorney* is a case which is both factually and legally highly distinguishable from *Bass*. *Dorney* focused on a specific statutory provision in the Township Code and involved the filing of exceptions and a petition for review from a township commissioners' report in the Court of Common Pleas. This is a highly different scenario than that presented in *Bass*.

Further, even if we read *Dorney* to be addressing the same general issue as that presented in *Bass*, we cannot construe *Dorney* to have overruled *Bass*. *Dorney* states the standard for relief from a statutory appeal deadline as fraud or breakdown in court operations. Although at first blush this would appear to exclude the *Bass* non-negligent

happenstance ground, as we have explained above, *Bass* can reasonably be construed as having merely created a new species of breakdown in court operations, i.e. non-negligent conduct by an attorney who is in some senses an officer of the court. If we construe *Bass* in this manner, then the *Dorney* Court's statement of the applicable standard would not necessarily exclude non-negligent happenstance.

As in the case of *Bass*, the Supreme Court itself has never referred to *Dorney*. Since *Dorney*, however, numerous decisions of both this and the Commonwealth Court have continued to treat *Bass* as a viable part of our law. *See, e.g., Moring, supra; Guat Gnoh Ho, supra; Commonwealth v. Smith*, 348 Pa.Super. 10, 501 A.2d 273 (1985). We agree with these Courts' conclusion that *Bass* retains vitality.

In making this determination, we note that we are aware of this Court's decision in *In re Adoption of J.A.S.*, 330 Pa.Super. 151, 479 A.2d 8 (1984). As we have indicated in footnote 1 *supra*, in *J.A.S.* a natural mother attempted to appeal nunc pro tunc from a trial court order terminating her parental rights. The Superior Court reversed the trial court's denial of permission to appeal and remanded for a hearing to ascertain the reasons for the late filing. The Court did so because the mother's affidavit in support of her petition for permission to appeal alleged facts which, if proven, would constitute fraud or a breakdown in court operations as the reason for the late filing. *Id.*, 330 Pa.Superior Ct. at 153, 479 at 9. The Superior Court appended a footnote to its decision stating that *Dorney* eliminated any further need to determine the scope of *Bass*' special exception for nonnegligent failure to file an appeal. *Id.*, 330 Pa.Superior Ct. at 152, 479 at 9 n. 1.

As we have indicated, we disagree with this conclusion. Additionally, we note that we are not bound to follow the *J.A.S.* Court's interpretation of *Dorney* in that it is clearly dicta. There was no allegation in *J.A.S.* that nonnegligent happenstance was the reason for the mother's late filing of her appeal and, therefore, the applicability of *Bass* was not

directly at issue. Moreover, the *J.A.S.* Court's actual decision was to remand for a fact finding hearing. This was not a decision on the merits of the mother's right to appeal nunc pro tunc. It cannot, therefore, be construed to stand for the proposition that such an appeal cannot be allowed on grounds of non-negligent happenstance.

Since we have concluded that *Bass* retains vitality, we now turn to an application of *Bass* to the case before us. We find that it offers appellants no assistance. We agree with those courts that have given *Bass* a narrow scope, limiting it to cases presenting unique and compelling facts justifying a late filed appeal. Consequently, we decline to extend *Bass* to cover a situation like the instant case. As we have stated, there is no question that appellants' counsel did not act with the care and professionalism expected of an attorney. Unlike in *Bass* itself, counsel here has not presented us with any indication that the appeal filing deadline was missed despite the existence of adequate deadline monitoring procedures at counsel's office. Indeed, here counsel was absent from his office for an extended period and yet despite this fact, he did not make any special arrangements to insure that his professional obligations would continue to be fulfilled. Under these circumstances, where there is no evidence of non-negligent happenstance, an appeal nunc pro tunc cannot be permitted on the basis of *Bass*.

Appellants argue that an appeal nunc pro tunc should nevertheless be allowed in the instant case on what appear to be equitable grounds. As we have previously indicated, because this case involves a termination of appellants' parental rights, it does call upon us to be particularly sensitive to appellants' plea. Thus, we have given careful consideration to appellants' "equitable" argument.

In support of this argument, appellants refer us to the decision of our Supreme Court in *Estate of Gasbarini v. Medical Center of Beaver County, Inc.*, 487 Pa. 266, 409 A.2d 343 (1979). Appellants also direct our attention to *Klugman v. Gimbel Brothers, Inc.*, 198 Pa.Super. 268, 182

A.2d 223 (1962). Both of these cases involve issues which are not precisely the same as that presented here but which are highly analogous. They are not directly concerned with the circumstances under which an appeal nunc pro tunc can be filed. They are both directed to the circumstances under which a trial court may "open" or "vacate" its own judgment after that judgment has become final through the passage of the time for reconsideration by the trial court or appeal to an appellate court.

In *Estate of Gasbarini,* the trial court had entered a final order sustaining preliminary objections to appellant's complaint. Shortly thereafter, appellant learned that her counsel had been suspended from the practice of law (and later disbarred) and had not been providing her with representation in connection with her action. In fact, counsel had never responded to the preliminary objections that were ultimately sustained against appellant. Appellant then secured new counsel and petitioned to have the judgment against her, now a year old, vacated and her complaint reinstated. The trial court granted appellant's petition. Superior Court reversed, stating that a final judgment in a contested proceeding can only be "opened" upon a showing of extraordinary cause justifying the intervention of the court. Superior Court concluded that no such cause was shown in that case. *Id.,* 487 Pa. at 269–70, 409 A.2d at 344–45. The Supreme Court reversed Superior Court and reinstated the trial court's order vacating the judgment. *Id.,* 487 Pa. at 273, 409 A.2d at 347. The Court stated the general rule that a final judgment may not be vacated. However, the Court also stated the exception to this rule that provides that a final judgment may be opened if fraud "or other equitable considerations required the granting of such relief." *Id.,* 487 Pa. at 270, 409 A.2d at 345. The Court concluded that the fact that appellant's attorney had been suspended and could not represent her in connection with the preliminary objections that were ultimately granted, coupled with the fact that her attorney had misrepresented to her that he *was* representing her, constituted sufficient equitable grounds to allow the judgment to be opened.

*Id.* The Court specifically stated that it did not regard the case as involving simple attorney neglect which alone would not justify opening the judgment. *Id.*

Similarly, *Klugman* involved a trial court's opening of a final judgment entered upon an arbitration panel's award. *Klugman* is slightly more analogous to the instant case than *Estate of Gasbarini* in that *Klugman* involved the action of a trial court in opening a judgment to allow an "appeal" to the trial court by the defendant against whom the judgment had been entered in the arbitration proceeding. Actually, the "appeal" involved conducting a trial de novo before the court of common pleas and the case is, therefore, more directly concerned with the opening of a final judgment than with an appeal nunc pro tunc. *Klugman*, 198 Pa.Super. at 270–72, 182 A.2d at 224–25.

The *Klugman* Court discussed both the standard for allowing the opening of a final judgment and the standard for allowing an appeal nunc pro tunc. As to opening a final judgment, the Court stated:

> Unlike a judgment entered by confession or upon default, which remains within the control of the court indefinitely and may be opened or vacated at any time upon proper cause shown, a judgment entered in an adverse proceeding ordinarily cannot be disturbed after the expiration of the term at which it is entered.... The rule that adverse judgments may not be opened after the expiration of the term is not absolute, but the discretionary power of the court over such judgments is quite limited. Generally, the rule has been relaxed only where fraud appeared or the circumstances were so grave or compelling as to constitute "extraordinary cause" justifying intervention by the court.

*Id.*, 198 Pa.Superior Ct. at 272, 182 A.2d at 225 (citations omitted).

In contrast, the *Klugman* Court indicated that a slightly different standard applied for the allowance of an appeal nunc pro tunc. The standard it enunciated was, as we have fully explained above, fraud or "neglect of a court official",

i.e. breakdown in court operations. Concluding that neither the standard for opening or vacating a final judgment nor for allowing an appeal nunc pro tunc included mere attorney neglect, *Klugman* reversed the trial court's opening of the final judgment.

We cannot grant appellants relief in the instant case based upon either of the foregoing cases or the principles they enunciate. We have already concluded that this case involves attorney neglect. Both *Estate of Gasbarini* and *Klugman* conclude that this alone is an insufficient basis for a grant of relief. Appellants seem to suggest that despite this, the harsh result that will attend a decision by this Court to disallow this appeal is one of the equitable considerations which might, under *Estate of Gasbarini*, persuade us to allow the appeal nunc pro tunc. We do not agree. Although *Estate of Gasbarini* may be read to suggest that there is a broad spectrum of equitable considerations that might impact our decision, we do not think that was the *Estate of Gasbarini* Court's intent. Moreover, as we have already indicated, *Estate of Gasbarini* is not directly in point.

 We note, however, that we do perceive there to be unnecessary distinction between the standard under which a trial court can "open" its own final judgment entered in an adverse proceeding and the standard under which an appeal to an appellate court nunc pro tunc can be allowed. In the former, the standard is fraud or other "extraordinary cause". In the latter, the standard is "fraud or breakdown in court operations" and, of course, the *Bass* non-negligent happenstance ground. In neither is attorney neglect enough. We are at pains to see the real distinction between these standards and see no reason why one should be drawn. In both instances, a decision to allow the petitioning party to proceed results in allowing a final disposition of an adverse proceeding to be subject to another round of review, albeit in different courts.[3]

---

**3.** A final judgment in a contested proceeding is to be contrasted with both a final judgment entered by default or confession and an inter-

Recently, an en banc panel of this Court considered the gamut of situations in which a trial court may act to affect its own judgment. In *Luckenbaugh v. Shearer,* 362 Pa.Super. 9, 523 A.2d 399 (1987), we stated:

> The judgment in this case ... was not entered by confession pursuant to a warrant of attorney. Also, it was not entered by default upon the filing of a praecipe. Rather, it was entered by the trial court in a contested proceeding.... As such, it is not subject to attack by a petition for a rule to show cause why judgment should not be open [sic] and/or stricken.
>
> A judgment entered in a contested proceeding which ends the litigation must either be appealed within thirty days or the trial court must expressly grant reconsideration within thirty days from the entry of the judgment.

*Id.,* 362 Pa.Superior Ct. at 13, 523 A.2d at 401. Failing such a grant of reconsideration or appeal, we stated that the trial court could only grant relief from the judgment if there has been fraud or extraordinary cause. *Id., quoting Simpson*

locutory order. As to the former, a final judgment entered by default or confession is not entered after both parties have had a full opportunity to present their positions on the issues and the interest in preserving the finality of such judgments is correspondingly lower than where a final judgment has been entered after a complete adverse proceeding. Thus, a default or confessed judgment may be opened at any time upon proper cause shown. *See Simpson v. Allstate Ins.* 350 Pa.Super. 239, 504 A.2d 335 (1986) (quoting *Klugman,* 198 Pa.Super. at 272, 182 A.2d at 225). Similarly, an interlocutory order of a trial court may be modified at any time. Where the order has not been entered as a judgment or final decree, the trial court has inherent power to reconsider its order even in the absence of fraud or other extraordinary cause. *Atlantic Richfield Co. v. J.J. White, Inc.,* 302 Pa.Super. 276, 448 A.2d 634 (1982) (citing *Commonwealth v. Bowden,* 456 Pa. 278, 309 A.2d 714 (1973) (30 limit on modification of orders by trial court provided in 42 Pa.Cons.Stat.Ann. 5505 does not apply to interlocutory orders); Pa.R.C.P. 1701(b)(6) (trial court may proceed further in any matter in which non-appealable interlocutory order has been entered despite the filing of a notice of appeal from the order). Even where our rules provide for the filing of post-trial motions to such an order, the time for the filing of such motions can be extended by the trial court and the court may reconsider its interlocutory order on the grounds asserted in the late post-trial motions where "good and sufficient reason" for the late filing is shown. *McAleer, Inc. v. Iceland Products, Inc.,* 475 Pa. 610, 381 A.2d 441 (1977).

*v. Allstate Ins. Co.,* 350 Pa.Super. 239, 504 A.2d 335 (1986); *accord Insurance Company of North America v. Bishop,* 365 Pa.Super. 183, 529 A.2d 33 (1987). We further stated that the extraordinary cause courts have so frequently referred to "is generally an oversight or action on the part of the court or the judicial process which operates to deny the losing party knowledge of the entry of final judgment ...." *Id.*

Thus, in *Luckenbaugh* we appear to have moved toward equating the two standards. Nevertheless, the standards remain somewhat different in that it would appear that some equitable considerations, like those present in *Estate of Gasbarini,* may sway a court to grant relief from a final judgment and yet would not be enough to permit the allowance of an appeal nunc pro tunc.[4] To the extent this disparity does exist, we must await a decision from our Supreme Court. As we noted, a unitary standard focusing solely on fraud or breakdown in court operations seems preferable.

Although we are satisfied that none of the authority cited by appellants provides a ground for allowance of an appeal nunc pro tunc in this case, we are compelled to consider one additional source of authority that we have independently located which arguably provides such a ground. We are aware that our Supreme Court has in at least one case indicated a special concern for the rights of natural parents in termination cases and has overlooked certain procedural deficiencies to better protect those rights.

In *In re H.E.W.,* 487 Pa. 637, 410 A.2d 793 (1980), a natural mother appealed from a trial court decree terminating her parental rights. The mother's rights were first terminated by entry of a decree on November 26, 1974, which was entered after a hearing. The mother had notice

---

**4.** Interestingly, *Estate of Gasbarini* would appear to be the equivalent in the context of relief from final judgment cases of the *Bass* decision in the context of appeal nunc pro tunc cases. As in *Bass, Estate of Gasbarini* presented the court with a factual scenario sufficiently unique and compelling to warrant relief, although it did not fit precisely within the traditional principles applicable to such cases.

of the hearing but she did not attend. Over two months later, the mother filed a petition to open and vacate the November decree. The trial court granted the petition and conducted a new hearing on the termination which the mother attended. On May 26, 1977, the trial court entered a decree again terminating the mother's rights. In its Opinion, the trial court stated that although it did not find justification for termination on the merits, it considered the mother's petition to open the prior decree to be in the nature of an appeal which was untimely. Thus, the trial court concluded that the mother's rights had to be terminated despite the merits in her favor. *Id.*, 487 Pa. at 638–39, 410 A.2d at 793–94.

Quite understandably, the Supreme Court reversed. *Id.*, 487 Pa. at 639, 410 A.2d at 794. Although the Court concluded that there was support in the record for a finding that the mother had waived her claims of error by failing to attend the first hearing or to file timely exceptions to or an appeal from the November decree, the Court also took specific note of the "severity of the emotional impact which attends a court decree terminating . . . parental rights . . ." *Id.* (citing *In re Howard*, 468 Pa. 71, 75–6, 360 A.2d 184, 186 (1976)). The Court also noted that its review of a termination decree was limited to ascertaining whether the demanding requirements of the termination statute had been met. Since the trial court's finding on the merits had actually been that termination was *not* warranted, the Court chose to waive the applicable procedural rules and, in the interest of justice, to remand for a de novo termination proceeding. *Id.*

Justice Roberts authored a strong dissent in *H.E.W.* He pointed to the strong competing policy favoring the finality of judgments, particularly in the context of a termination of parental rights proceeding where, as in *H.E.W.*, new prospective parents had already petitioned to adopt the child. *Id.*, 487 Pa. at 643, 410 A.2d at 796 (Roberts, J., dissenting).

*H.E.W.* appears to stand alone. We have found no other case indicating that a special attitude toward what might be

termed "procedural deficiencies" should be applied in termination cases.[5] We also note that the *H.E.W.* Court appeared to limit its decision by stating that it would not "in this *unusual* case, ... permit injustice to be done in the name of form." *Id.*, 487 Pa. at 642, 410 A.2d at 795 (emphasis added).

In contrast, the case before us presents no such unusual circumstance. The trial court conducted this termination proceeding with the utmost care. The first hearing on the termination was continued so as to insure that the natural parents could obtain legal representation. At the next hearing, both parents were present, testified and had counsel. After this carefully conducted proceeding, the trial court entered its decree terminating appellants' rights. Exceptions were duly filed, a further hearing was held, and the exceptions were disposed of in appellee's favor. There is simply no comparison between these circumstances and those which convinced the *H.E.W.* Court that an injustice of such magnitude had been perpetrated that procedural deficiencies should be disregarded.

The order of the trial court is affirmed.

JOHNSON, J., files a concurring opinion.

JOHNSON, Judge, concurring:

I agree with the result reached by the majority. The facts presented in this case do not involve either fraud or some breakdown in the trial court's operation through default of its officers. The conclusion by the Honorable Paul B. Greiner that the appellant must be denied any right to file notice of appeal *nunc pro tunc* is eminently sound and must be affirmed.

5. It is noteworthy that the *J.A.S.* Court's footnote regarding the present viability of *Bass* also contained a statement that the *Dorney Park* case eliminated the need to determine the scope of *H.E.W.* As we have already explained at length, we do not read *Dorney Park* nearly as broadly as did the *J.A.S.* Court.

I depart from my colleagues in their belief that *Bass v. Commonwealth*, 485 Pa. 256, 401 A.2d 1133 (1979) must be revisited and analyzed in disposing of this appeal.

Firstly, appellant has asked us to determine whether the facts presented "constitute: 'fraud, breakdown, or extraordinary cause' which would allow filing of an appeal *nunc pro tunc.*" Brief for appellant, pages i, 3 and 8. Although the appellee, in its brief, refers to *Bass* in passing, while relying on *Dorney Park Coaster Company, Inc. v. Board of Commissioners South Whitehall Township*, 503 Pa. 67, 468 A.2d 462 (1983), the appellant neither cites to *Bass* nor makes a clear argument for non-negligent failure to file an appeal.

Secondly, I am not persuaded that *Bass* has any precedential value with regard to allowance of appeal *nunc pro tunc.* Only five members of the Supreme Court participated in the decision in *Bass.* Justice Manderino wrote the opinion in which only Justice Larson joined. This was less than a majority of those participating. Justice (now Chief Justice) Nix filed a concurring opinion in which he stated that he agreed with the result reached, and was "substantially in accord with the reasoning employed to reach that result." Justice Roberts filed a strong dissent in which then-Chief Justice Eagen joined. Justice O'Brien did not participate. While one cannot dispute that the *Bass* opinion is decisional, it is not clear to me, and I am not persuaded, that it is precedential. *See Bata v. Central–Penn National Bank of Philadelphia*, 448 Pa. 355, 373, 293 A.2d 343, 353 (1972); *Commonwealth v. Davenport*, 462 Pa. 543, 559, n. 3, 342 A.2d 67, 75 n. 3 (1975); *Commonwealth v. Silverman*, 442 Pa. 211, 218, n. 8, 275 A.2d 308, 312, n. 8 (1971); *compare Commonwealth v. Scott*, 279 Pa.Super. 8, 11, 420 A.2d 717, 719 (1980). In an opinion filed just two months after *Bass* was decided, Justice Roberts did cite to *Bass* while dissenting from the full court's determination, in which five justices joined, refusing to overturn a trial court decision to permit a case to proceed to trial in the absence of the defendant and its counsel. *Dublin Sportswear v.*

*Charlett,* 485 Pa. 633, 403 A.2d 568 (1979). (Roberts, J., dissenting, 485 Pa. at 640, 403 A.2d 568 at 572.) The *Bass* case was cited in *Commonwealth v. Revtai,* 516 Pa. 53, 532 A.2d 1 (1987) (Opinion by McDermott, J.) for the traditional proposition of breakdown in the normal operation of the courts. The *Revtai* case did not involve an appeal *nunc pro tunc,* but rather the proper application of Pa.R.Crim.P. 130(d).

Thirdly, I agree with this court's earlier assertion, if only by way of footnote, that *Dorney Park, supra,* eliminated the problems in determining the scope of *Bass,* with its special exception for non-negligent failure to file an appeal. *In re Adoption of J.A.S.,* 330 Pa.Super. 151, 152, n. 1, 479 A.2d 8, 9 n. 1 (1984). While the majority refers to this court's treatment of *Bass* as being "quite restrictive," the fact of the matter is that this court has yet to apply the unique holding in *Bass* in permitting any appeal *nunc pro tunc.*

Where the Supreme Court has not revisited the plurality opinion in *Bass* since 1979, and where this court has never relied upon *Bass* in allowing appeals *nunc pro tunc,* I would decline to find, as does the majority, that *Bass* retains vitality.

I have difficulty in understanding the majority's assertion that "numerous decisions of both this and the Commonwealth Court have continued to treat *Bass* as a viable part of our law." Majority Opinion, page 454. None of the three cases cited for this proposition found on behalf of the appellant. In *Commonwealth v. Smith,* 348 Pa.Super. 10, 501 A.2d 273 (1985), our court quoted with approval from Justice Roberts' dissent in *Bass* and affirmed the order denying a petition for permission to appeal *nunc pro tunc.* In *Moring v. Dunne,* 342 Pa.Super. 414, 493 A.2d 89 (1985), this court quashed an appeal which had been granted *nunc pro tunc,* finding negligent conduct in the face of the death of appellant's counsel. Also in *Moring,* this court collected cases which had refused to follow *Bass.* Finally, in *Guat Gnoh Ho v. Unemployment Compensation Board,* 106 Pa.Commw. 154, 525 A.2d 874 (1987), Judge Palladino af-

firmed for a unanimous Commonwealth Court panel a decision of the Board of Review dismissing a request for an untimely hearing.

Only if making reference to a case can provide vitality might it be said that *Bass* continues as a viable part of our law. It is for this reason, in part, that I feel compelled to distance myself from the majority's analysis of *Bass*. I find little difference on the facts between the conduct of the attorney in *Bass* and the conduct of the attorney in the case now before us. I am unable to distinguish between the lawyer in *Bass* having failed to make adequate arrangements to check the work of his secretarial staff and the failure of the attorney here involved to make "special arrangements to insure that his professional obligations would continue to be fulfilled."

Justice Roberts anticipated this case in his dissent in *Bass*, when he argued:

Is not today's action a signal to litigants that the majority is abandoning the timeliness requirements firmly established by Pennsylvania statutory and decisional law and by our rules of court and will grant relief as it sees fit, based not on law or precedent but rather on what is asserted to be the staff situation in an attorney's office? Today it is the claimed illness of an employee which the majority says is persuasive. Tomorrow will it not be the claimed illness of a member of the employee's family or whatever the reasons for an employee's absence or any other irrelevance? Will not today's result create a new and unnecessary layer of delay, mandating a special inquiry whenever an appeal is untimely filed? An effective appellate judicial adversary system cannot function as a tribunal of equal justice under law when it excuses negligent noncompliance with the law on an ad hoc basis. Who is to know, therefore, whether today's newly created majority rule will be available to all litigants or whether its application is for today's appellant-litigant alone, "a restricted railroad ticket, good for this day and train only?" *Smith v. Allwright*, 321 U.S. 649, 669, 64 S.Ct. 757, 768, 88 L.Ed. 987, 1000 (1944). Does not the failure

to enforce the timeliness requirements constitute an invitation to litigants to disregard the timeliness requirements and thus adversely affect the evenhanded administration of justice?

485 Pa. at 262, 401 A.2d at 1136–37.

I cannot help but align myself with my distinguished colleague, the Honorable Abraham H. Lipez, since retired, who looked at *Bass* in *Gallardy v. Ashcraft,* 288 Pa.Super. 37, 430 A.2d 1201 (1981) and remarked:

8. In *State Farm Mut. Auto Ins. Co. v. Schultz, supra,* note 3, [281] Pa.Super. [212] at [218], n. 7, 421 A.2d 1224, 1227, n. 7 (1980), the *Bass* case was distinguished on the ground that there was no indication on the record that the failure to file a timely appeal resulted from non-negligent happenstance. Here, too, there is no indication of non-negligent happenstance, but that might not suffice to distinguish this case, as it did *Schultz,* which involved the timeliness of an appeal to this court. Here the question is timeliness of the appeal to the court below, which applied the *Bass* "non-negligence" standard to facts arguably involving negligence. It is difficult to fault the court below for doing this, since the *Bass* majority applied its "non-negligence" standard to a set of facts which plainly seemed to involve negligence under any traditional meaning of the term. The confusion is compounded by the lack of any standard procedure in making a "non-negligence" determination, as well as the lack of a standard of review where, as here, we review the lower court's finding of "non-negligence," rather than make our own determination as to the timeliness of an appeal to our court. We have managed to avoid these thorny problems in this case through our holding on nonretroactivity, a point we may raise ourselves, although not argued by appellant, because it involves the jurisdiction of the court below. *See generally, Commonwealth v. Boerner,* [281] Pa.Super. [505], [515], n. 11, 422 A.2d 583, 588–89, n. 11 (1980). Unless the Supreme Court soon clarifies the effect of *Bass,* however, it will not be long before it is causing just the kind of chaos predicted by Justice Rob-

erts in his dissenting opinion and opinion dissenting from the denial of reargument.

*Gallardy,* 288 Pa.Super. at 43, n. 8, 430 A.2d at 1204, n. 8.

I agree with my colleagues that this case involves attorney neglect. This being true, I believe it to be the better course to avoid further review of *Bass v. Commonwealth,* and leave to our Supreme Court the task of placing that decision in its proper perspective.

Moreover, the cases cited by appellant in an attempt to secure what my colleagues term "equitable" relief involve attempts to open or vacate a judgment in the trial court and are clearly inapposite on this appeal where the only issue is the right to appeal *nunc pro tunc.* I therefore would decline to analyze those cases for the purpose of finding an "unnecessary distinction" between what is clearly before us and what is not a part of this appeal.

Because the appellant has not shown either fraud or some breakdown in the trial court's operation, the trial court's order denying appellant's petition to appeal *nunc pro tunc* should be affirmed. I therefore join in the result reached by my colleagues.