David L. GEORGE, Jr., in his own right and as Administrator of the Estate of Julie George, Deceased, Appellant,

v.

## CONSOLIDATED RAIL CORPORATION

v.

Borough of Fleetwood.

Commonwealth Court of Pennsylvania.

Argued April 12, 2000.

Decided July 10, 2000.

Daniel J. Mann, Philadelphia, for Appellant.

Craig J. Staudenmaier, Harrisburg, for Appellees.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., and LEADBETTER, J.

LEADBETTER, Judge.

■ David L. George, Jr., plaintiff in this action for the wrongful death of his wife, appeals from the judgment entered on a jury verdict in favor of defendant, Conrail. The issue is what effect the Federal Railroad Safety Act of 1970, 84 Stat. 971, *as amended*, 49 U.S.C. § 20101 et seq. and associated regulations at 23 C.F.R. §§ 646.214(b)(3) and (4) have on Mr. George's claim, which is based on the alleged inadequacy of the warning signs posted at the railroad crossing. In view of the recent decision of the United States Supreme Court in *Norfolk Southern Railway Company v. Shanklin*, —— U.S. ——, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000), we must conclude that the claim is preempted.[1]

In November of 1991, Julie George was killed when a Conrail freight locomotive collided with the car she was driving. The accident occurred at the South Beech Street railroad crossing in the Borough of Fleetwood, Berks County. At the time of the accident, only reflectorized crossbuck signs at the side of the cartway, erected by Conrail in 1987, warned drivers of the presence of the rail crossing. David George filed wrongful death and survival actions in Philadelphia County against Conrail asserting negligence in the failure to erect cross gates and lights at the railroad crossing. The action was transferred to Berks County and Conrail joined Barry and Lori Burkert, the owners of the land

---

1. We may affirm for reasons other than those relied upon by the trial court. *See Beck v.* *Zabrowski*, 168 Pa.Cmwlth. 385, 650 A.2d 1152, 1156 n. 12 (1994).

at the northeast corner of the railroad crossing, the Pennsylvania Public Utility Commission (PUC), Pennsylvania Department of Transportation (DOT), Richmond Township and the Borough of Fleetwood. Following the entry of summary judgment in favor of PUC and DOT, dismissal of the action against Richmond Township and settlement with the Burkerts, the claims against Conrail for inadequate warnings at the crossing and against the Borough for inadequate road signs and markings were tried before a jury.[2] In a special verdict, the jury found neither Conrail nor the Borough negligent. Following denial of George's post-trial motions for judgment n.o.v. or a new trial, the court entered judgment in favor of Conrail and the Borough according to the verdict. Thereafter, George filed the present appeal in which he seeks a new trial against Conrail.[3] George contends that the trial court erred in refusing to instruct the jury that the federal regulations at 23 C.F.R. § 646.214(b) established a standard requiring cross gates and lights at the Beech Street crossing.

■ The regulations at 23 C.F.R. § 646.214 address the adequacy of warning devices at railroad crossings where improvements have been made using federal funds. The Supreme Court described the federal statutory and regulatory scheme as follows:

In 1970, Congress enacted the Federal Railroad Safety Act (FRSA) 'to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents.' 49 U.S.C. § 20101. The FRSA grants the Secretary of Transportation the authority to 'prescribe regulations and issue orders for every area of railroad safety,'

§ 20103(a), and directs the Secretary to 'maintain a coordinated effort to develop and carry out solutions to the railroad grade crossing problem,' § 20134(a).

. . . .

Three years after passing the FRSA, Congress enacted the Highway Safety Act of 1973, § 203, 87 Stat. 283, which, among other things, created the Federal Railway–Highway Crossings Program (Crossings Program), see 23 U.S.C. § 130. That program makes funds available to States for the 'cost of construction of projects for the elimination of hazards of railway-highway crossings.' § 130(a). To participate in the Crossings Program, all States must 'conduct and systematically maintain a survey of all highways to identify those railroad crossings which may require separation, relocation, or protective devices, and establish and implement a schedule of projects for this purpose.' § 130(d). That schedule must, '[a]t a minimum, . . . provide signs for all railway-highway crossings.' Ibid.

The Secretary, through the Federal Highway Administration (FHWA), has promulgated several regulations implementing the Crossings Program. One of those regulations, 23 C.F.R. § 646.214(b) (1999), addresses the design of grade crossing improvements. More specifically, §§ 646.214(b)(3) and (4) address the adequacy of warning devices installed under the program. According to § 646.214(b)(3), '[a]dequate warning devices . . . on any project where Federal-aid funds participate in the installation of the devices are to include automatic gates with flashing light signals' if any of several conditions are present. Those conditions include

---

2. Prior to trial, Conrail moved for summary judgment on the ground of federal preemption. The trial court denied the motion concluding that an issue of fact existed as to whether Conrail had been relieved of any duty to install gates and lights as the result of a determination by a diagnostic team that the crossbuck signs were adequate. As stated herein, this was not the proper focus of analysis. The determinative question is whether federal funds were used to install warning devices.

3. George has entered into a settlement of his claim against the Borough of Fleetwood.

(A) '[m]ultiple main line railroad tracks,' (B) multiple tracks in the vicinity such that one train might 'obscure the movement of another train approaching the crossing,' (C) high speed trains combined with limited sight distances, (D) a 'combination of high speeds and moderately high volumes of highway and railroad traffic,' (E) the use of the crossing by 'substantial numbers of schoolbuses or trucks carrying hazardous materials,' or (F) when a 'diagnostic team recommends them.' § 646.214(b)(3)(i). Subsection (b)(4) states that '[f]or crossings where the requirements of § 646.214(b)(3) are not applicable, the type of warning device to be installed, whether the determination is made by a State regulatory agency, State highway agency, and/or the railroad, is subject to the approval of FHWA.' Thus, at crossings where any of the conditions listed in (b)(3) exist, adequate warning devices, if installed using federal funds, are automatic gates and flashing lights. And where the (b)(3) conditions are not present, the decision of what devices to install is subject to FHWA approval.

*Shanklin,* —— U.S. at —— – ——, 120 S.Ct. at 1471–72 (footnote omitted).

In the present case, it is undisputed that in 1987 Pennsylvania participated under Section 203 of the Highway Safety Act of 1973 (The Act), 23 U.S.C. § 130, in a program designed to improve safety at railroad crossings. The program was intended to bring all crossbuck signs at public rail-highway crossings into conformance with the Federal Highway Administration Manual on Uniform Traffic Control Devices (MUTCD). Pursuant to this program, representatives from DOT, PUC, and Conrail conducted a field inspection of the Beech Street crossing. Thereafter, Conrail installed one new crossbuck sign

mounted on a breakaway wooden post at the south side of the crossing and placed an additional breakaway post for the existing crossbuck sign on the north side of the crossing. After completion of this work and submission of required documentation,[4] DOT paid Conrail from funds apportioned to Pennsylvania by the Federal Highway Administration pursuant to Section 203 of The Act, 23 U.S.C. § 130.

The Beech Street crossing has multiple main line railroad tracks, which satisfies one of the conditions triggering the requirements under 23 C.F.R. § 646.214(b)(3) as to particular warning devices. In *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the Supreme Court held that when these regulations are applicable, state tort law is preempted. *Id.* at 670, 113 S.Ct. 1732. The Court in *Easterwood,* concluded that the preemptive effect arose from the express preemption clause of the Federal Railroad Safety Act under which "the States are permitted to 'adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary [of Transportation] has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement.'" *Id.* at 662, 113 S.Ct. 1732 *quoting* 45 U.S.C. § 434 (recodified at 49 U.S.C. § 20106). The *Easterwood* Court summarized its analysis as follows:

> In short, for projects in which federal funds participate in the installation of warning devices, the Secretary has determined the devices to be installed and the means by which railroads are to participate in their selection. The Secretary's regulations therefore cover the subject matter of state law which, like the tort law on which respondent relies, seeks to impose an independent duty on

---

4. Pennsylvania called the program the "Railroad Crossbuck Replacement Program" on the administrative forms used by the Pennsylvania Department of Transportation to document work performed under the program.

The U.S. Supreme Court, in *Shanklin,* called the program funded under Section 203 of The Act, as this one was, the "Crossings Program."

a railroad to identify and/or repair dangerous crossings.

507 U.S. at 671, 113 S.Ct. 1732.

Most recently, in *Shanklin,* the Supreme Court ruled that the preemptive regulations at §§ 646.214(b)(3) and (4) apply to all warning devices actually installed with federal funds. —— U.S. at ——, 120 S.Ct. at 1473. The *Shanklin* Court specifically rejected the contention that preemption should not apply where, as in the present case, federal funds are used merely to equip crossings with advance warning signs and reflectorized crossbucks, the bare minimum required by the MUTCD, without any judgment as to whether the signs are adequate. *Id.* at ——, 120 S.Ct. at 1473. In *Shanklin,* the Court stated:

> When the FHWA approves a crossing improvement project and the State installs the warning devices using federal funds, §§ 646.214(b)(3) and (4) establish a federal standard for the adequacy of those devices that displaces state tort law addressing the same subject.... It is this displacement of state law concerning the devices' adequacy, and not the State's or the FHWA's adherence to the standard set out in §§ 646.214(b)(3) and (4) or to the requirements of the MUTCD, that preempts state tort actions. Whether the State should have originally installed different or additional devices, or whether conditions at the crossing have changed such that automatic gates and flashing lights would be appropriate, is immaterial to the preemption question.

*Shanklin,* —— U.S. at ——, 120 S.Ct. at 1476.

In the present case, Conrail used federal funds to install the crossbuck signs, which were placed in accordance with applicable federal regulations. Therefore, George's state common law cause of action for inadequate warning devices is barred by the doctrine of preemption and the issue of Conrail's liability should never have reached a jury. Conrail is entitled to judgment as a matter of law.

Accordingly, the judgment in favor of Conrail is affirmed.

### ORDER

AND NOW, this 10th day of July, 2000, the judgment entered in the Court of Common Pleas of Berks County in the above captioned matter in favor of Conrail is hereby affirmed.