Thomas MASTROCOLA, Chris & Michelle Hammel, h/w and Michelle McDonald and Wardlaw & Joyce Hall, h/w and John & Peggy Weston, h/w

v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION
AUTHORITY

Elizabeth Graves

v.

Southeastern Pennsylvania
Transportation
Authority

Appeal of: Southeastern Pennsylvania
Transportation Authority

Thomas Mastrocola, Chris & Michelle Hammel, h/w and Michelle McDonald and Wardlaw & Joyce Hall, h/w and John & Peggy Weston, h/w

v.

Southeastern Pennsylvania
Transportation
Authority

Elizabeth Graves

v.

Southeastern Pennsylvania
Transportation
Authority

Appeal of: Thomas Mastrocola, Chris & Michelle Hammell, h/w, Michelle McDonald, Wardlaw & Joyce Hall, h/w John & Peggy Weston, h/w and Elizabeth Graves.

Commonwealth Court of Pennsylvania.

Argued June 11, 2007.
Decided Jan. 8, 2008.

Thomas Bruno, II, Philadelphia, for designated appellant, Thomas Mastrocola.

Dolores Rocco Kulp, Philadelphia, for appellee, SEPTA.

BEFORE: LEADBETTER, President Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Thomas Mastrocola, Chris and Michelle Hammel, Michelle McDonald, Wardlaw and Joyce Hall, John and Peggy Weston, and Elizabeth Graves (collectively, Homeowners) and Southeastern Pennsylvania Transportation Authority (SEPTA) appeal two orders of the Court of Common Pleas of Philadelphia County (trial court) denying their respective motions for post-trial relief. Homeowners filed a civil complaint alleging that SEPTA negligently constructed temporary railroad track that resulted in vibration that damaged their properties.[1] A jury trial was held and a verdict was rendered in favor of Homeowners. In this appeal we are asked to consider whether Homeowners' state tort claims are preempted by federal law.

---

1. Ms. Graves filed a separate complaint with identical allegations which was consolidated with the complaint filed by the other Homeowners.

Concluding that Homeowners' claims are preempted by federal law, we must reverse the trial court's order denying SEPTA's motion for post-trial relief.

Homeowners own property near SEPTA's Melrose Park train station. In 2002, SEPTA began a project to renovate the tracks and the station at Melrose Park. In preparation, SEPTA constructed a temporary track in order to re-route trains around the work site. The temporary track was located between the existing northbound and southbound tracks. To construct the track, SEPTA put down ballast[2] that was pressed by a tamping machine, and then put down track with bolted rail joints with a gap at the rail ends. Trains began running on the temporary track in November or December 2002, and did so for the next fourteen to sixteen months.

In February 2004, Homeowners filed a complaint alleging that SEPTA negligently constructed the temporary track. Homeowners averred that trains traveling along the temporary southbound track caused vibration that resulted in damage to their properties in the nature of cracks in walls, ceilings and patios, and foundation damage.[3] SEPTA filed a motion *in limine* requesting a jury view of the scene of the temporary tracks and Homeowners' homes.

The matter proceeded to a jury trial. Homeowners presented testimony from Anthony Bohara, SEPTA's manager of track engineering who supervised the design of the temporary track. Bohara explained that the place where rail ends meet is referred to as a rail joint, and the ends of the rails must be attached either by welding or by bolting.[4] Bohara testified that the temporary track was bolted with four bolts at each rail joint, as required by "federally mandated track safety standards." Reproduced Record at 523a (R.R. _____). Bohara stated that this temporary track design has been used for over one hundred years in this location and that it comports with "standard track construction." R.R. 471a, 519a. Bohara also explained that it is necessary to leave a gap between rails because in hot weather the rails expand and they must have room to do so. Otherwise, the rails will expand and actually push the track sideways, which, Bohara explained, is one of the "biggest fears" in the railroad industry and is more likely to occur when the rails are welded instead of bolted. R.R. 491a. Therefore, leaving gaps between the rails is a "common practice" and is not an unsafe condition. R.R. 468a. Bohara was questioned regarding one particular rail gap, and he replied that the gap was not too large and was not unsafe.

Homeowners presented the testimony of Leonard Vicoli, director of the track department of SEPTA's railroad division, who was responsible for constructing the temporary track that was designed by Mr. Bohara's department. Vicoli testified that the track was constructed using a standard method, the way tracks have long been constructed. Vicoli testified that the rail

---

**2.** Ballast is stone that is used in a railroad bed.

**3.** A party suing under a theory of negligence has a duty to prove the elements of a cause of action in negligence, which are: 1) a duty, recognized by law, requiring the actor to conform to a certain standard with respect to the injured party; 2) a failure of the actor to conform to that standard; 3) a causal connection between the conduct and the resulting injury; and 4) actual loss or damage to the interests of another. *Fritz v. Glen Mills School*, 894 A.2d 172, 176 (Pa.Cmwlth.2006).

**4.** Homeowners seem to suggest that SEPTA should have used welded rail instead of bolted rail.

gap in the bolted joint at the southernmost area of temporary track appeared to be normal and did not pose a safety issue for the trains traveling on the temporary track.

Homeowners presented testimony from Deborah Anderson, licensed in architectural planning and site planning, civil engineering, and wetland science. Anderson went to the site of the tracks and the Mastrocola/Hammel property[5] and observed that when trains went over that part of the temporary track with the rail gap at the joint, the track moved and vibrations were sent out.[6] Anderson likened the vibrations to "mini earthquakes" that traveled into the schist rock in the ground and reached the home, causing crack damage. R.R. 641a–645a.

Homeowners also presented testimony from Daniel Honig, a structural engineer who visited all of Homeowners' properties to assess the crack damage. Honig found that all of the residences had recent crack damage that was consistent with being in close proximity to a vibration source. The homes also had some prior existing damage.

Finally, Homeowners presented testimony from James Druecker, a civil engineer who examined Homeowners' homes and provided estimates as to the cost to repair the damage. For the Mastrocola and Hammel home, repairs would cost $94,005.41; for the McDonald home, repairs would cost $20,000; for the Weston home, repairs would cost $15,000; for the Graves home, repairs would cost $16,000; and for the Hall home, repairs would cost $28,307.

In response, SEPTA presented testimony from John Erdreich, Ph.D., of Ostergaard Acoustical Associates, who performed vibration studies in May 2003 near the Melrose Park station. Dr. Erdreich opined that the vibrations caused by the passing trains were insufficient to cause damage to nearby structures. SEPTA also presented testimony from Richard Daniels, an engineer, who opined that the train vibrations were within acceptable limits and did not cause damage to the houses.

Thereupon, SEPTA filed a motion for directed verdict asserting that the trial court lacked subject matter jurisdiction to hear Homeowners' claims. SEPTA asserted that Homeowners' claims were preempted under two federal statutes: the Federal Railroad Safety Act of 1970 (FRSA)[7] and the Interstate Commerce Commission Termination Act[8] (ICCTA). The motion was denied.

On May 1, 2006, the jury rendered a verdict that SEPTA was "negligent by creating a dangerous condition of its temporary track" and that "SEPTA's negligence [was] a factual cause of the damage to [Homeowners'] property." R.R. 1313a–1314a. The jury's award was as follows: $10,000 to Mastrocola and Hammel; $5,000 to Michelle McDonald; $3,750 to Wardlaw and Joyce Hall; $3,750 to John and Peggy Weston; and $3,750 to Elizabeth Graves.

SEPTA filed a motion for post-trial relief in the nature of a request for judgment notwithstanding the verdict (judgment n.o.v.), again asserting federal preemption.

---

**5.** Thomas Mastrocola and Chris and Michelle Hammel own the same home.

**6.** At times, it is difficult to ascertain exactly what Homeowners allege was defective about the temporary track. However, Homeowners have stated that "it is the gap at the bolted

rail joint at the southern terminus that is the subject of this lawsuit." R.R. 1407a.

**7.** 49 U.S.C. §§ 20101–20155.

**8.** 49 U.S.C. §§ 10101–16106.

Homeowners filed a motion for post-trial relief on the issue of damages requesting additur or a new trial. By order dated July 28, 2006, the trial court denied SEPTA's post-trial motion, and by order dated August 23, 2006, the trial court denied Homeowners' post-trial motion. Both parties appealed.

On November 1, 2006, the trial court issued one opinion for both appeals. As to SEPTA, the trial court determined that SEPTA waived the issue of preemption by failing to raise it as new matter in its answer to Homeowners' complaints. The trial court likened preemption to the defense of immunity which must be pleaded as new matter. Nevertheless, the trial court also concluded that Homeowners' claims were not federally preempted and that the trial court had subject matter jurisdiction. The trial court explained, *inter alia*, that the FRSA is concerned with the safety of individuals and, as such, does not address state tort claims for property damage and, therefore, it did not preempt common law tort claims brought under state law.

As to Homeowners, the trial court offered several reasons for denying their request for additur or a new trial. The court concluded that Homeowners had waived the question of whether a jury view of the inside of their homes was appropriate and, at any rate, such jury view was proper. The trial court also concluded that it did not err in refusing to allow the jury to review James Druecker's report during deliberations. Finally, the trial court determined that the jury's award was not so contrary to the weight of the evidence as to shock one's sense of justice and, therefore, it was appropriate to deny

the request for additur or a new trial. The appeals of SEPTA and Homeowners, which were consolidated, are now before this Court.

Homeowners' appeal concerns the amount of damages awarded and involves three issues. First, Homeowners argue that the trial court erred in failing to grant additur or a new trial where, as here, the amount of damages awarded was too low and where the jury had no rational basis for reducing the amount of damages requested. Second, Homeowners argue that the trial court abused its discretion by allowing the jury to view the interiors of Homeowners' homes after an expert advised the court that a layman could not differentiate between cracks caused by track vibration and cracks caused by age. Third, Homeowners contend that the trial court erred by denying the jury's request during deliberations to review the estimates of repair and photographs contained in James Druecker's reports.

■■■■ SEPTA's appeal raises federal preemption. SEPTA argues that the trial court erred in ruling that SEPTA waived the issue of preemption, because preemption under the FRSA is a matter of subject matter jurisdiction that is not required to be raised in the pleadings and can never be waived.[9] Further, SEPTA argues that Homeowners' claims should never have been submitted to the jury because their claims were preempted by the FRSA. Specifically, SEPTA argues that the FRSA establishes congressional intent that the federal enactment supersede state law; that Homeowners' common law tort claims effectively interfere with comprehensive federal law covering the field of railway safety; and that Homeowners' claims and

---

9. Issues pertaining to jurisdiction are pure questions of law, and an appellate court's scope of review is plenary. *Robert Half International, Inc. v. Marlton Technologies, Inc.,* 902 A.2d 519, 524 (Pa.Super.2006). Questions of law are subject to a de novo standard of review. *Id.*

theories of track construction are in conflict and incompatible with the FRSA.

In the alternative, SEPTA argues that Homeowners' claims are preempted under the ICCTA. SEPTA argues that it had to construct its track in the manner prescribed by the Federal Railroad Authority. For common law tort decisions to direct another method constitutes an economic regulation preempted by the ICCTA.

■ We begin with SEPTA's appeal. As an initial matter, we must consider whether SEPTA has waived the issue of preemption. SEPTA argues that preemption is a matter of subject matter jurisdiction that can be pleaded at any time, and Homeowners counter that preemption under the FRSA is an affirmative defense that must be pleaded in the answer as new matter. Homeowners further argue that, at any rate, SEPTA waived the preemption issue by not objecting to the jury charge regarding a dangerous condition on SEPTA's property causing harm.

The law in Pennsylvania concerning pleadings that must be included in new matter is found in Rule 1030 of the Rules of Civil Procedure, which provides in relevant part:

(a) Except as provided by subdivision (b), all affirmative defenses including but not limited to ... immunity from suit ... shall be pleaded in a responsive pleading under the heading "New Matter"....

(b) The affirmative defenses of assumption of the risk, comparative negligence and contributory negligence need not be pleaded.

Pa. R.C.P. No. 1030. The rule concerning waiver is found in Rule 1032, which provides:

(a) *A party waives all defenses* and objections which are not presented either by preliminary objection, answer or reply, *except a defense which is not required to be pleaded* under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim, the defenses of failure to exercise or exhaust a statutory remedy and an adequate remedy at law *and any other nonwaivable defense or objection.*

(b) Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter or that there has been a failure to join an indispensable party, the court shall order that the action be transferred to a court of the Commonwealth which has jurisdiction or that the indispensable party be joined, but if that is not possible, then it shall dismiss the action.

Pa. R.C.P. No. 1032 (emphasis added).

The trial court ruled that SEPTA waived its preemption defense, likening the defense of preemption to the defense of immunity which, according to Rule 1030, must be pleaded in new matter. We disagree with this analysis. SEPTA does not claim that it is immune from any common law tort claim. Rather, SEPTA argues that Homeowners could not proceed in state court under their theory of state tort liability because state law in the area of track construction and safety has been federally preempted.

■ Pennsylvania courts have held that preemption is a question of subject matter jurisdiction and the competence of the court to reach the merits of the claim raised. *LaChappelle v. Interocean Management Corp.*, 731 A.2d 163, 165 (Pa.Super.1999). Our Superior Court has artfully explained that:

The most effective manner of preempting state law is by the inclusion of a specific provision in the federal legislation. Such clear and unambiguous language is exceedingly helpful in determining the often contentious issue of whether a state court has *subject matter jurisdiction* over the cause of action at issue.

*Fetterman v. Green,* 455 Pa.Super. 639, 689 A.2d 289, 292 (1997) (emphasis added). Further, in *George v. Consolidated Rail Corporation,* 756 A.2d 126, 129 (Pa. Cmwlth.2000), this Court concluded that the plaintiff's state common law negligence claims based on allegedly inadequate warning signs posted at a railroad crossing were preempted by the FRSA, and as such, "the issue of Conrail's liability should never have reached a jury." Stated otherwise, the state court lacked subject matter jurisdiction.[10]

The issue of subject matter jurisdiction may be raised by the parties at any stage of the proceedings or by the court *sua sponte. City of Philadelphia v. White,* 727 A.2d 627, 630 (Pa.Cmwlth.1999). Lack of subject matter jurisdiction of a court or administrative tribunal to act in a matter is an issue that cannot be waived by the parties, nor can the parties confer subject matter jurisdiction on a court or tribunal by agreement or stipulation. *Blackwell v. State Ethics Commission,* 523 Pa. 347, 358, 567 A.2d 630, 636 (1989).

Because federal preemption is an issue of subject matter jurisdiction, SEPTA is correct that it did not waive preemption by not raising it in its answer and new matter. Subject matter jurisdiction is an issue that cannot be waived and can be raised at any time. Accordingly, the trial court erred in determining that SEPTA waived the federal preemption issue.

We now turn to the merits of SEPTA's assertion that Homeowners' claims in this case are preempted by federal law. The principle of federal preemption of state law is derived from Article VI, Clause 2 of the United States Constitution, *i.e.,* the Supremacy Clause.[11] Under the Supremacy Clause, federal law is the supreme law of the land and any conflicts between federal and state laws must be resolved in favor of federal law. *Krentz v. Consolidated Rail Corporation,* 589 Pa. 576, 595, 910 A.2d 20, 31–32 (2006). In *Office of Disciplinary Counsel v. Marcone,* 579 Pa. 1, 855 A.2d 654 (2004), the Pennsylvania Supreme Court explained preemption as follows:

There are three ways in which a state law may be preempted. First, state law may be preempted where the United States Congress enacts a provision which expressly preempts the state enactment. Likewise, preemption may be found where Congress has legislated in a field so comprehensively that it has implicitly expressed an intention to occupy the given field to the exclusion of state law. Finally, a state enactment will be preempted where a state law

10. Homeowners assert that the issue is not a matter of subject matter jurisdiction because there is concurrent jurisdiction in state and federal courts under the FRSA. We reject this argument. Homeowners are correct that state courts have jurisdiction to decide whether state law is preempted by the FRSA; however, if a state court determines that state law is, in fact, preempted, the state court has no jurisdiction to continue with the case, as explained in *George.*

11. It provides in relevant part:

This Constitution and the Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2.

conflicts with a federal law. Such a conflict may be found in two instances, when it is impossible to comply with both federal and state law or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

*Id.* at 17, 855 A.2d at 664 (internal citations and quotations omitted).

The FRSA, at 49 U.S.C. § 20101, explains that its purpose is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." The FRSA, at 49 U.S.C. § 20103(a), mandates that the "Secretary of Transportation, as necessary, shall prescribe regulations and issue orders for every area of railroad safety...." In response, the Secretary has prescribed numerous regulations related to railroad safety. With regard to the preemptive effect of the FRSA, the FRSA contains a specific preemption provision at 49 U.S.C. § 20106, which provides:

(a) National uniformity of regulation.

(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

(2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order-

(A) is necessary to eliminate or reduce an essentially local safety or security hazard;

(B) is not incompatible with a law, regulation, or order of the United States Government; and

(C) does not unreasonably burden interstate commerce.

(b) Clarification regarding State law causes of action.

(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage *alleging that a party—*

(A) *has failed to comply with the Federal standard of care established by a regulation or order* issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

(B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

(C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

(2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

(c) Jurisdiction. Nothing in this section creates a Federal cause of action on

behalf of an injured party or confers Federal question jurisdiction for such State law causes of action.

49 U.S.C. § 20106 (emphasis added).[12]

■■■■ SEPTA is correct that Congress has expressed a specific intent that the FRSA will preempt some state laws, and these state laws include "[l]egal duties imposed on railroads by the common law." *CSX Transportation, Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). In *Easterwood,* the United States Supreme Court discussed "the pre-emptive effect of FRSA on negligence suits against railroads," and concluded that because the FRSA contains an express preemption provision, a party claiming that regulations have a preemptive effect must establish that the federal

regulations "cover the same subject matter" as state law.[13] *Id.* at 661, 664, 113 S.Ct. 1732. This means that the petitioner must establish more than that the federal regulations "touch upon" or "relate to" the subject matter; rather, the federal regulations must "substantially subsume" the subject matter of the relevant state law. *Id.* at 664, 113 S.Ct. 1732.[14] However, the federal regulations need not be identical to the state law in order to have preemptive effect. *Krentz v. Consolidated Rail Corp.,* 589 Pa. 576, 599, 910 A.2d 20, 34 (2006).[15]

■■■■ The focus of preemption analysis is not upon a state law's intent or purpose but, rather, upon the state law's operation, *i.e.,* whether it operates upon the same object as the federal regulations. *Id.* Otherwise, state law could frustrate

**12.** 49 U.S.C. § 20106 was amended by Section 1528 of the "Implementing Recommendations of the 9/11 Commission Act of 2007," P.L. 110–53, which was signed into law by President George W. Bush on August 3, 2007. The amendment restated the previously existing federal preemption rule in subsection (a), and added subsections (b) and (c). SEPTA and the Association of American Railroads, which has filed an *amicus curiae* brief with this Court, both point out that the section was amended to rectify a situation in which two federal courts, both of which decided cases arising from the same train derailment accident occurring at Minot, North Dakota on January 18, 2002, concluded that a railroad's violation of federal standards of care was not relevant to a preemption analysis. *See* H.R.Rep. No. 110–259, at 351 (2007) (Conf. Rep.). Those cases are *Mehl v. Canadian Pacific Railway,* 417 F.Supp.2d 1104 (D.N.D. 2006) and *Lundeen v. Canadian Pacific Railway,* 507 F.Supp.2d 1006 (D.Minn.2007). Congress responded by clarifying that a state law cause of action is not preempted when it is based on an allegation that a party failed to comply with a federal standard of care established by regulation or failed to comply with its own plan, rule or standard created pursuant to a federal regulation. We agree with SEPTA that the amendment, by its own title, is merely a clarification of what is not preempted by the FRSA, and does not alter

the substance of the federal preemption analysis provided for in 49 U.S.C. § 20106(a).

**13.** The current version of the FRSA preemption section is identical in substance to the version discussed in *Easterwood,* which contained slightly different wording. *In re: Derailment Cases,* 416 F.3d 787, 793 n. 5 (8th Cir.2005).

**14.** In *Easterwood,* the United States Supreme Court held that a negligence claim based on excessive train speed was preempted by FRSA regulations that set maximum speed limits for all trains.

**15.** In *Krentz,* a vehicle operator crashed his car into a train that was stationary and completely blocking the railroad crossing. Krentz brought a negligence per se claim against Conrail. The Pennsylvania Supreme Court determined that 18 Pa.C.S. § 6907, which prohibits trains from blocking railroad crossings in Pennsylvania, is preempted by the FRSA. This is because the FRSA regulations governing inspection and testing for train brake systems cover the subject matter of 18 Pa.C.S. § 6907 and, further, are incompatible with 18 Pa.C.S. § 6907, because that section requires trains to keep moving while the FRSA brake system regulations direct trains to remain stationary.

the operation of federal law simply by stating that its purpose is something other than the federal objective. *Id.* at 598–599, 910 A.2d at 33–34 (quoting *Gade v. National Solid Wastes Management Association,* 505 U.S. 88, 105–106, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)). In addition, the issue of FRSA preemption must not turn on the facts of each individual case, otherwise "the very essence of the FRSA as a comprehensive scheme of uniform railroad safety standards would be thwarted." *Id.* at 602, 910 A.2d at 36.

SEPTA argues that the FRSA provides the exclusive means for achieving railroad safety, thus necessitating preemption of Homeowners' claims. The Secretary of Transportation has promulgated regulations that prescribe the construction, maintenance and inspection of railroad tracks, and SEPTA contends that these regulations substantially subsume the subject matter of Homeowners' claims, which pertain to proper track construction. SEPTA argues that Homeowners' common law claims for damages are based on their own perceived notions of track construction, which interferes with the uniform policy of railroad safety established in the federal regulations. Thus, Homeowners' lawsuit impermissibly attempts to regulate an area subsumed by federal law. Further, SEPTA asserts that the trial court erred in reasoning that federal preemption does not apply in this case because the FRSA deals with railroad safety while Homeowners' claims deal with property damage, which is a different topic. According to SEPTA, the FRSA applies to all safety issues and it would be illogical to carve out an exception to preemption for property damage claims.

Homeowners counter that the FRSA preempts only state law that covers the same topic of railroad safety and that their property damage claims do not involve railroad safety. Rather, Homeowners have sued SEPTA in its capacity as a landowner, because it created a dangerous condition on its real estate that caused harm to Homeowners' properties. Homeowners argue that SEPTA's obligation to construct its track in a way that is safe for rail travel is not inconsistent with its obligation not to create a dangerous condition in its real estate that is unreasonably dangerous to adjoining property owners.

As previously explained, when a court determines that FRSA regulations cover the subject matter forming the basis of a state tort claim, that state claim is preempted. There are numerous cases in which the courts have found that state law is preempted. For example, in *George v. Consolidated Rail Corporation,* 756 A.2d 126 (Pa.Cmwlth.2000), this Court concluded that a widower's wrongful death claim based on allegedly inadequate warning signs posted at a railroad crossing was preempted by FRSA regulations addressing the adequacy of warning devices at railroad crossings in cases where improvements were made using federal funds.[16] More recently, in *Mayor & City Council of Baltimore v. CSX Transportation, Inc.,* 404 F.Supp.2d 869 (D.Md.2005), which involved a lawsuit for damages resulting from a train derailment, the Federal Court for the District of Maryland held that the City of Baltimore's claims of negligent inspection and maintenance of a railcar were preempted by FRSA regulations covering the same subject matter.

■ Therefore, our starting point must be an examination of the applicable

---

**16.** Our decision in *George* was based on the United States Supreme Court's holding in *Norfolk Southern Railway Company v. Shank-* *lin,* 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000).

FRSA regulations in this case. Pursuant to the FRSA's authority, the Secretary of Transportation has promulgated numerous FRSA regulations dealing with "Track Safety Standards." 49 C.F.R. pt. 213. These regulations mandate track safety and construction. As a few examples, the regulation at Section 213.103 provides general instructions for the use of ballast; Section 213.109 deals with crossties; Section 213.113 concerns defective rails; Section 213.135 deals with switches; and Section 213.137 deals with frogs. Of particular importance to this case is the regulation at Section 213.121 dealing with "rail joints," which prescribes the requirements for the bolts located in the joint.[17] The regulation at Section 213.2 explains that the regulations covering track safety standards preempt any state law covering the same subject matter except for an additional or more stringent law that is necessary due to an essential local safety hazard; is not incompatible with a law of the U.S. Government; and does not unreasonably burden interstate commerce.

In addition, the regulations require track inspections and, as explained in Section 213.231, prescribe "requirements for the frequency and manner of inspecting track to detect deviations from the standards" contained in the regulations. As mandated in Section 213.7, each track owner is required to "designate qualified persons to inspect track for defects." Pursuant to Section 213.7(b)(1), those designated persons must have at least one year of experience in railroad track inspection or have a combination of experience and training in track inspection.[18]

The above-recited FRSA track safety regulations cover the very subject matter of Homeowners' common law tort claims. The regulations cover ballast, rails and rail joints, which are things that Homeowners have claimed, at various times, were unsafe in this particular case. Although Homeowners couch their claim in terms of a "dangerous condition" on SEPTA's property and SEPTA's responsibility under the law as a neighboring land owner, the fact of the matter is that the construction of SEPTA's temporary track is the gravamen of Homeowners' complaint.

Further, contrary to Homeowners' arguments, it does not matter that the common law of negligence concerns property damage, and the FRSA concerns rail safety. Courts must examine not the stated intent of the federal and state laws but, rather, whether the laws operate upon the same object. *Krentz,* at 599, 910 A.2d at 34. In this case, both the FRSA and Home-

---

**17.** Section 213.121 provides in relevant part:
 (a) Each rail joint, insulated joint, and compromise joint shall be of a structurally sound design and dimensions for the rail on which it is applied.
 * * *
 (d) In the case of conventional jointed track, each rail shall be bolted with at least two bolts at each joint in Classes 2 through 5 track, and with at least one bolt in Class 1 track.
 (e) In the case of continuous welded rail track, each rail shall be bolted with at least two bolts at each joint.
 (f) Each joint bar shall be held in position by track bolts tightened to allow the joint bar to firmly support the abutting rail ends *and to allow longitudinal movement of the rail in the joint to accommodate expansion and contraction due to temperature variations* . . . .

 * * *

49 C.F.R. § 213.121 (emphasis added).

**18.** Under the FRSA, at 49 U.S.C. § 20111, the Secretary has exclusive authority to impose civil penalties for violation of the railroad safety regulations; to request an injunction for violation of a safety regulation; and to request that the Attorney General bring a civil action in a U.S. district court.

owners' common law claims operate upon the same object, *i.e.*, proper track construction. Further, while Homeowners attempted to have Ms. Anderson, who admittedly is not an expert in railroads, and a jury inspect the temporary tracks and determine whether they were negligently constructed, the FRSA regulations mandate inspections only by individuals qualified under federal standards. Therefore, the federal regulations concerning track construction and maintenance do, in fact, substantially subsume the subject matter of Homeowners' claims.[19]

■ However, our inquiry does not end there. Even if federal law covers the subject matter of the relevant state law, preemption may not apply. The preemption provision at 49 U.S.C. § 20106(a)(2) allows a state to "continue in force an additional or more stringent law" related to railroad safety when the law (1) is necessary to eliminate or reduce an essentially local safety or security hazard; (2) is not incompatible with a law, regulation, or order of the United States Government; and (3) does not unreasonably burden interstate commerce. Therefore, the express preemption provision of the FRSA only applies if the Executive Branch has taken an action that "covers the subject matter" of the state law *and* the state law fails to satisfy the three requirements enumerated in 49 U.S.C. § 20106. *Krentz*, at 597, 910 A.2d at 32.

■ SEPTA has alleged that Homeowners' common law negligence claims are incompatible with the FRSA regulations concerning track construction and inspection. Accordingly, it asserts that the FRSA preempts a negligence suit premised on Homeowners' own notions of proper track construction. We agree.[20]

The FRSA states that its main goal is safety and national uniformity of the law. The regulations mandate track construction and maintenance standards and require inspections by experienced individuals. A jury of lay individuals is not equipped, as required by the regulations, to determine whether a railroad track complies with the technical federal standards. In addition, allowing a judge or a jury to substitute its judgment for that of qualified inspectors in determining whether or not a railroad bed and track are safely constructed would undermine the goal of the FRSA, which is to achieve nationally uniform standards, and would subject a railroad to possible liability under a negligence theory even though the railroad may be fully compliant with the federal regulations.[21] Because there is a federal system in place for railroad construction and inspection, we hold that the FRSA covers the subject matter of a common law negligence claim based on negligent construction, as filed in this case, and that such a general negligence claim is

---

19. Although its holding is not binding on this Court, we note that the North Dakota district court has reached an identical conclusion. That court held that negligent construction and maintenance claims concerning such issues as bolt tightness, cracked joint bars, welded rail, rail anchoring and defective tract conditions are covered by the FRSA regulations, because those regulations are "clearly intended to prevent negligent construction and maintenance." *Mehl v. Canadian Pacific Railway, Ltd.*, 417 F.Supp.2d 1104, 1116–17 (D.N.D.2006).

20. See *Easterwood*, 507 U.S. at 675, 113 S.Ct. 1732 (explaining that reliance on common law negligence is incompatible with the FRSA and the Secretary's regulations).

21. The goal of national uniformity also weighs against Homeowners' earlier argument that preemption under the FRSA is waived if not pleaded in new matter.

incompatible with the applicable FRSA regulations. Therefore, Homeowners' claims are preempted by the FRSA.

 Homeowners claim SEPTA created a local hazard and so the FRSA does not apply.[22] Because we have already determined that Homeowners' claims are based on law that is incompatible with federal regulations, we need go no further. However, for the sake of completeness we will address this argument. Homeowners argue that the local hazard in this case is the way the "gap and deflecting rail intersected with the local topography and geology." Homeowners' Brief at 8. Homeowners point to the schist rock in the area which accelerated vibrations and reflected them into the bedrock, causing damage to the unique older homes in the area.

SEPTA counters that Homeowners' local hazard argument is extremely general and points out that Homeowners have not cited any law in support of the argument. SEPTA contends that the circumstances in this case do not constitute an essentially local safety hazard as defined by the courts.

The exception for local hazards "was designed ... to enable the states to respond to local situations which are not statewide in character and not capable of being adequately encompassed within uniform national standards." *National Association of Regulatory Utility Commissioners v. Coleman*, 542 F.2d 11, 14–15 (3d Cir.1976). "Once the federal government has covered the subject matter, as it has done here, states have authority only over those hazards which are 'essentially local.'" *Union Pacific Railroad Company v. California Public Utilities Commission*, 346 F.3d 851, 861 (9th Cir.2003). As explained by the United States Supreme Court, the common law of negligence is not the type of law that a state may continue in force in order to eliminate or reduce an essentially local safety hazard, because the "common law of negligence provides a general rule to address all hazards caused by lack of due care, not just those owing to unique local conditions." *Easterwood*, 507 U.S. at 675, 113 S.Ct. 1732.

In the instant case, Homeowners have proceeded on a theory of general common law negligence which, as explained in *Easterwood*, is not meant to address an essentially local safety hazard. What is more, there is no evidence establishing that the interaction between the temporary tracks and the schist rock under the Melrose Park station is something that is "essentially local." This type of rock may exist in many places throughout the Commonwealth in proximity to homes and railroad tracks. Further, Homeowners have not alleged that this is the type of hazard that the Secretary could not have taken into account when promulgating the regulations under the FRSA. As such, the situation fails to fulfill the criteria required to show an essentially local hazard. In addition, as discussed above, a cause of action based on general negligence theories is

---

**22.** Homeowners also contend that SEPTA never proved that its tracks were built in total compliance with the FRSA. We note that the basis of Homeowners' lawsuit was common law negligence. At no time did Homeowners claim that SEPTA's temporary tracks did not comply with FRSA requirements. In fact, Homeowners never referenced the FRSA at all. In such a case as this one, where the focus is on whether federal law preempts a purely common law negligence claim, the inquiry is only whether the federal regulations cover the subject matter of the state law, not whether the railroad actually complied with those regulations. In addition, we point out that Mr. Bohara and Mr. Vicoli, whose testimony was presented by Homeowners, both testified that SEPTA's temporary tracks were constructed in the standard manner and Bohara specifically testified that the track design complied with federal standards.

incompatible with the FRSA regulations governing track construction. Therefore, because the track safety regulations cover the subject matter of Homeowners' claims and Pennsylvania common law negligence law fails to satisfy all three requirements [23] enumerated in 49 U.S.C. § 20106(a)(2), including being compatible with federal law and necessary to address an essentially local safety hazard, Homeowners' claims are preempted by the FRSA.[24] The trial court, therefore, erred in denying SEPTA's post-trial motion requesting judgment n.o.v.

Accordingly, we reverse the trial court's order denying SEPTA's motion for post-trial relief and grant SEPTA's request for judgment n.o.v. Further, based on our disposition of this case, we dismiss Homeowners' appeal as moot.

### ORDER

AND NOW, this 8th day of January, 2008, the appeal of Southeastern Pennsylvania Transportation Authority is hereby GRANTED, and the order of the Court of Common Pleas of Philadelphia County dated July 28, 2006, in the above captioned case denying Southeastern Pennsylvania Transportation Authority's motion for judgment n.o.v. is REVERSED. The appeal of Thomas Mastrocola, Chris & Michelle Hammell, Michelle McDonald, Wardlaw & Joyce Hall, John & Peggy Weston and Elizabeth Graves is DISMISSED AS MOOT.

23. Because negligence law is not required in order to eliminate or reduce an essentially local safety hazard and is incompatible with federal law, we do not address whether it does not burden interstate commerce, because *all three* requirements would have to be met in order to escape preemption.

24. Based on our disposition of the case, we do not reach SEPTA's argument that Homeowners' claims were preempted by the ICC-TA.