J-A02007-25                    2025 PA Super 74

| PATRICK J. CARR, PATRICK K. CARR, AND DANIEL K. CARR, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellants | : | |
| v. | : | |
| FIRST COMMONWEALTH BANK | : | |
| Appellant | : | No. 345 WDA 2024 |

Appeal from the Order Entered February 21, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-19-013839, GD-21-005609

| PATRICK J. CARR, PATRICK K. CARR, AND DANIEL K. CARR, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellants | : | |
| v. | : | |
| FIRST COMMONWEALTH BANK | : | |
| Appellant | : | No. 441 WDA 2024 |

Appeal from the Order Entered February 21, 2024
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-19-013839, GD-21-005609

BEFORE:  KUNSELMAN, J., MURRAY, J., and BECK, J.

OPINION BY KUNSELMAN, J.                    **FILED: March 26, 2025**

In this arbitration dispute, Patrick J. Carr ("Father"), Patrick K. Carr, and Daniel K. Carr ("Sons") appeal from the trial court's order partially vacating the arbitrator's award in favor of the Bank.  First Commonwealth Bank also cross appeals from that same order.  It contends that the trial court lacked subject-matter jurisdiction to modify the arbitration award, because the Carrs

appealed the arbitration award to the trial court well after the 30-day appeal period expired. We agree. Thus, we vacate the trial court's February 21, 2024 Order for lack of jurisdiction and remand for entry of judgment in favor of the Bank.

On January 22, 2019, the Carrs opened a joint account at the Bank and deposited $83,576.78. The Carrs signed an agreement with the Bank, which incorporated common-law-arbitration provisions.

A judgment creditor from an unrelated matter[1] learned of the account and garnished it. Without seeking the Carrs' permission, the Bank issued a check to the creditor for $38,046.97 from the account to satisfy the garnishment judgment. In response to the payout, the Carrs sued the Bank in the Court of Common Pleas of Allegheny County, which compelled arbitration.[2]

On March 23, 2021, the arbitrator ruled in favor of the Bank on all counts. He dismissed the Carrs' claims as meritless and awarded $10,245.32 in attorneys' fees and costs to the Bank.

Tragically, three weeks later, the attorney for the Carrs suffered the unexpected death of his stepson. While dealing with the fallout of the death, counsel missed the 30-day window in which to appeal the arbitrator's award

---

[1] *See Joyce v. Carr*, GD 14-013292 (C.C.P. Allegheny 2016). Daniel K. Carr was the only named defendant in that proceeding.

[2] The Carrs raised counts for breach of contract, breach of fiduciary duty, and violations of the Uniform Trade Practices and Consumer Protection Law. *See* 73 P.S. §§ 201-1 – 201-10.

to the trial court. **See** Carrs' Motion for *Nunc Pro Tunc* Relief at 2-3 (admitting that "an appeal would have been due by April 23, 2021").

On May 11, 2021, the Carrs moved for *nunc pro tunc* relief and asked the trial court to set aside the 30-day filing requirement. On May 20, 2021, the Bank petitioned for the court to confirm the arbitration award and enter judgment in its favor.

On May 27, 2021, the trial court granted the Carrs 20 more days to appeal the arbitration award. It took no action on the Bank's petition.

On June 16, 2021, the Carrs moved to vacate the arbitration award and to proceed *de novo* before the common pleas court. The parties filed briefs, and the trial court heard oral argument. On August 25, 2021, the trial court affirmed the arbitrator's denial of relief to the Carrs but vacated the arbitrator's award of $10,245.32 in legal fees to the Bank.

The parties cross appealed, and this Court discovered "factual dispute[s] as to whether the Carrs received a copy of the arbitration agreement prior to signing the account agreement . . . [and] whether the Carrs accepted the terms of the arbitration agreement." **Carr v. First Commonwealth Bank**, 1130 WDA 2021, 1180 WDA 2021, 2023 WL 1794264 at *8 (Pa. Super. 2023) (non-precedential), *reargument denied* (April, 14 2023). Thus, the trial court "abused its discretion in [compelling arbitration] without receiving additional evidence to resolve the factual dispute regarding the existence of a valid agreement to arbitrate." **Id.** at *9. We vacated the August 25, 2021 Order

and remanded for an evidentiary hearing to ascertain whether the parties had entered a valid arbitration agreement.

Following the hearing, the trial court found that the parties formed a valid arbitration agreement. The court entered an order on February 21, 2024 reinstating the terms of its August 25, 2021 Order. Again, the parties cross appealed.

We discuss only the Bank's cross appeal, because it challenges the trial court's appellate jurisdiction to modify the arbitration award. That issue is dispositive. According to the Bank, because the Carrs did not appeal to the trial court within 30 days of the arbitration award, the trial court erroneously exercised jurisdiction over the motion to vacate the award. We agree.

The question of "appealability of an order goes to the appellate court's jurisdiction." **Williams v. Williams**, 385 A.2d 422, 423 (Pa. Super. 1978) (*en banc*). Lack of "jurisdiction of a court or administrative tribunal to act in a matter is an issue that cannot be waived by the parties, nor can the parties confer subject matter jurisdiction on a court or tribunal by agreement or stipulation." **Mastrocola v. Southeastern Pennsylvania Transportation Authority**, 941 A.2d 81, 88 (Pa. Cmwlth. 2008).

Jurisdiction is "a question of law; the appellate standard of review is *de novo*, and the scope of review is plenary." **Crespo v. Hughes**, 292 A.3d 612, 615 (Pa. Super. 2023).

"In a common-law-arbitration case, the parties have only 30 days to challenge the arbitrators' award." **Hall v. Nationwide Mutual Ins. Co.**, 629

A.2d 954, 957 (Pa. Super. 1993).  The General Assembly has commanded that, if a party petitions to confirm a common-law-arbitration award and 30 days have passed since the issuance of the award, "the court **shall** enter an order confirming the award and **shall** enter a judgment or decree in conformity with the order."  42 Pa.C.S.A. § 7342(b) (emphasis added).

Interpreting that section, this Court has said, "any issues a party wishes to raise must be raised within 30 days of the date of the award, since after that time it is mandatory for the trial court to confirm an award upon application of either party."  **Hall**, 629 A.2d at 957.  "This is in keeping with the 30-day time period for appeals established by the legislature in other types of cases."  **Id.**  Thus, we have directly analogized the time in which to seek review of a common-law-arbitration award to the filing of any other appeal.

Essentially, 42 Pa.C.S.A. § 7342(b), the statute setting forth the time period for appealing an arbitration award, functions like Pennsylvania Rule of Appellate Procedure 903.  Rule 903 "requires that all 'notices of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken.'"  **Whittaker v. Lu**, 323 A.3d 871, 875 (Pa. Super. 2024) (quoting Pa.R.A.P. 903).

We hold that the plain language of Section 7342(b), like Rule 903, is jurisdictional, because that statute deprives the trial court of competency to review the merits of an arbitrator's award if no party challenges the award

within 30 days.[3]  "Because this filing period is jurisdictional in nature, it must be strictly construed and may not be extended as a matter of indulgence or grace."  ***Id.***

Here, the Carrs acknowledged that they failed to seek review of the arbitration award in a timely manner.  ***See*** Carrs' Motion for *Nunc Pro Tunc* Relief at 2-3.  In fact, they did not even request *nunc pro tunc* relief until 19 days after their appellate window had closed.

Rather than confine itself to the appellate jurisdiction that the legislature prescribed, the trial court granted itself an additional 20 days from the date of its order to entertain the Carrs' appeal.  By the time the Carrs actually appealed to the trial court on June 16, 2021, 85 days had passed since the arbitrator entered the award.

In granting the Carrs this grace period, the trial court unintentionally violated the separation-of-powers doctrine. The Constitution of the Commonwealth of Pennsylvania explicitly grants the power to set jurisdictional boundaries of the courts to the legislature.  For example, the courts of common pleas "hav[e] unlimited original jurisdiction in all cases **except as may otherwise be provided by law.**"  Pa. Const. art. V § 5(b) (emphasis

---

[3] Notably, the Commonwealth Court reached the same conclusion regarding statutory-arbitration appeals for public-sector-union grievances.  "When a party seeks judicial review of an arbitrator's award, whether by asking the court to vacate the award or to modify or correct the award, such judicial review must be sought within 30 days of delivery of the award to the applicant."  ***Symons v. Schuylkill County Vocational School***, 884 A.2d 953, 957 (Pa. Cmwlth. 2005).

added).  In cases of appeals from arbitration, the General Assembly has provided that the courts of common pleas have only **limited** jurisdiction, lasting 30 days from the date of the arbitration award.  **See** 42 Pa.C.S.A. § 7342(b).  When that time frame expires, the trial court's appellate jurisdiction expires with it.

The Carrs contend that the trial court exercised permissible discretion in granting them more time to appeal.  They claim to have "demonstrated the existence of extraordinary circumstances which clearly justify the trial court's granting of *nunc pro tunc* relief."  Carrs' Reply/Cross-Appellee Brief at 16.  The Carrs recite the hardships their attorney endured after his stepson's death, including identifying the body, working with the State Police, rescheduling appointments and court hearings, planning the funeral, and comforting his grieving family members.  **See id.**

To support the trial court's extension of the appellate time period, the Carrs rely on **Bass v. Commonwealth**, 401 A.2d 1133 (Pa. 1979).  There, plaintiff brought a wrongful-death claim in the Commonwealth Court's original jurisdiction.  That court sustained a preliminary objection based on governmental immunity and dismissed one of the defendants.

Plaintiff's counsel authored a notice of appeal and gave it to his secretary for filing.  However, the secretary became ill and did not return to the office until after the appellate period expired.  Plaintiff filed a petition to appeal *nunc pro tunc* in the Supreme Court.  **Id.** at 1134.

Only five Justices heard the matter, rather than the High Court's full complement of seven Justices. Three Justices joined the lead opinion to grant *nunc pro tunc* relief and allow plaintiff's untimely appeal to proceed. Two Justices dissented. Thus, **Bass** is a minority-majority decision.[4]

Our research reveals that the Supreme Court of Pennsylvania cited **Bass** in majority opinions several times. The Court denied *nunc pro tunc* relief in **Criss v. Wise**, 781 A.2d 1156 (Pa. 2001). There, appellant's attorney mailed a notice of appeal to the prothonotary six days prior to the deadline for appeal, and the notice did not arrive at the courthouse until two days after the appeal period expired. The **Criss** Court held this was negligence, because delays in the mail during the Christmas holidays were foreseeable.

In three cases, the High Court granted *nunc pro tunc* relief. One involved a breakdown of court operations. **See Union Electric Corp. v. Board of Property Assessment, Appeals & Review of Allegheny County**, 746 A.2d 581, 583 (Pa. 2000) (allowing an appeal *nunc pro tunc* due to breakdown in court's operations where the Allegheny County Board of Property Assessment, Appeals and Review, without authority, issued an order extending the time for filing tax assessment appeals from the legislative deadline of February 29, 1996 to April 1, 1996).

---

[4] Pennsylvania adheres to the position that minority-majority decision of the Supreme Court is not a plurality, but rather is binding precedent. **See Commonwealth v. Holmes**, 79 A.3d 562, 575 n.8 (Pa. 2013) ("A decision of this Court has binding effect if a majority of the participating Justices joined the opinion.")

Another allowed a criminal defendant to file a late appeal from a district judge to the court of common pleas to protect his constitutional right of appeal. *See Commonwealth v. Stock*, 679 A.2d 760, 764-75 (Pa. 1996) (allowing an appeal *nunc pro tunc* from the district justice to the court of common pleas, where the defendant's attorney missed the deadline in order to protect defendant's state constitutional right to appeal and noting "it would be entirely unfair in the criminal context to permit [a defendant's] state constitutional right of an appeal to be extinguished solely on the basis of his counsel's failure to timely file the appeal where [the defendant] had requested an appeal to be filed" and no PCRA relief was available.)

In the final case, the Court allowed a claimant in an unemployment case to appeal late when he was hospitalized due to a heart attack, and filed his appeal four days after he was released. *See Cook v. Unemployment Compensation Board*, 671 A.2d 1130, 1132 (Pa. 1996) (finding extraordinary circumstances and allowing a *nunc pro tunc* appeal of unemployment case where the claimant was hospitalized during the time of the appeal deadline and there was no substantial evidence of record to support the board's conclusion that the claimant was able to conduct his appeal from his hospital bed; he was hospitalized following a collapse; he was placed in intensive care for three days followed by four days in ordinary care; he was unable to leave the hospital; he did not have with him his notice of determination; and the diagnosis upon discharge supported his claim that he was seriously ill when admitted to the hospital). *But see id.*, Dissenting

Opinion by Justice Zappala (believing **Bass** was wrongly decided by allowing "non-negligent happenstance" as a basis for allowing a *nunc pro tunc* appeal. He observed that the essential difficulty with **Bass** "is its *ad hoc* character, the complete lack of guidance for assessing whether given circumstances will be deemed 'non-negligent'"). We observe that, like **Bass**, **Cook** was also a minority-majority decision, where only three Justices spoke for the Court.

However, none of the situations where the Supreme Court allowed a late appeal applies here. Critically, this Court has repeatedly declined attempts to extend **Bass**.

For example, in **In re C.K.**, 535 A.2d 634 (Pa. Super. 1987), the orphans' court issued an order terminating the rights of C.K.'s parents on January 22, 1987. Three weeks later, the parents' attorney had to leave his office for an extended period, because his mother had a massive heart attack. The attorney needed to be at his mother's side around the clock.

Then, on February 19, 1987, the parents called the attorney's office and expressed their desire to appeal. The attorney did not contact his office until February 26, four days after the 30-day appellate period had run. The parents sought permission from the trial court to appeal *nunc pro tunc* on the grounds of their attorney's family emergency. The orphans' court denied relief, and, on appeal, we affirmed.

Like the Carrs, the parents in **C.K.** relied on **Bass**, *supra*, to excuse their failure to file a timely appeal. This Court rejected that reliance and said, "As the Supreme Court has so many times opined, the time for taking an

- 10 -

appeal cannot be extended as a matter of mere indulgence. An extension of such time can be permitted only in those cases where there has been fraud or some breakdown in the court's operation." *C.K.*, 535 A.2d at 636. We then reviewed the analysis of *Bass*, and interpreted it as having "appeared to create a new ground for an appeal *nunc pro tunc*, *i.e.*, non-negligent happenstance." *Id.* at 637.

This Court then explained why the logic of *Bass* does not extend to an attorney who misses an appellate filing date due to a family crisis as follows:

> We agree with those courts that have given *Bass* a narrow scope, limiting it to cases presenting unique and compelling facts justifying a late filed appeal. Consequently, we decline to extend *Bass* to cover a situation like the instant case. As we have stated, there is no question that appellants' counsel did not act with the care and professionalism expected of an attorney. Unlike in *Bass* itself, counsel here has not presented us with any indication that the appeal filing deadline was missed despite the existence of adequate, deadline-monitoring procedures at counsel's office. Indeed, here counsel was absent from his office for an extended period and yet despite this fact, he did not make any special arrangements to insure that his professional obligations would continue to be fulfilled. Under these circumstances, where there is no evidence of non-negligent happenstance, an appeal *nunc pro tunc* cannot be permitted on the basis of *Bass.*

*Id.* at 639.

Here, the Carrs' lawyer experienced tragedy at the death of his stepson, and he has our deepest sympathies. However, that does not mean he had a non-negligent reason for missing the appellate filing date. As in *C.K.*, counsel could not overlook his professional duties while tending to personal and

familial affairs.  Therefore, **Bass** does not afford the Carrs a basis for *nunc pro tunc* relief.

Additionally, the Carrs also cite **Baravordeh v. Chunhua Cui**, 330 EDA 2024, 2024 WL 4679239 (Pa. Super. 2024) (non-precedential), for the proposition that "an illness which affects counsel's ability to represent his/her client may justify the granting of *nunc pro tunc* relief."  Carrs' Third Step Brief at 17.  Notably, the trial court in **Baravordeh** did not grant *nunc pro tunc* relief.  The court determined that, although one of the appellant's attorneys contracted COVID-19 four days after the trial, this did **not** present a non-negligent reason for failing to file post-trial motions within ten days.  **See** Pa.R.C.P. 227.1(c)  (establishing a ten day deadline for the filing of post-trial motions).  On appeal, we affirmed.  Thus, the attorney's illness did not justify the late filing.

Furthermore, because **Baravordeh** dealt with post-trial motions, it is procedurally distinguishable from this case.  The trial court has discretion to grant *nunc pro tunc* relief on post-trial motions, so long as the request for *nunc pro tunc* relief is filed while the trial court retains jurisdiction – *i.e.*, an appeal has not yet been filed and 30 days have not passed.  **See** 42 Pa.C.S.A. § 5505.

"Pennsylvania courts have consistently held that trial court judges have wide latitude in considering whether to address the merits of post-trial motions that are filed outside the 10-day period required by Rule 227.1."  **D.L. Forrey & Assocs., Inc. v. Fuel City Truck Stop, Inc.**, 71 A.3d 915, 920 (Pa. Super.

2013); *see also Kurtas v. Kurtas* 555 A.2d 804, 806 (Pa. 1989) (holding that trial courts have the discretion to entertain untimely motions for post-trial relief because the 10-day period under Rule 227.1 is not a jurisdictional requirement, but merely a procedural rule). "So long as the court has jurisdiction, it can exercise its equitable powers to hear untimely post-trial motions." *Id.* During that 30 day period, the trial court has discretion to grant the *nunc pro tunc* relief.

Regarding an appeal from an arbitration award, by contrast, once the 30 days have ended, the trial court has no jurisdiction to grant *nunc pro tunc* relief, absent fraud, a breakdown in the operation of the courts, or a nonnegligent happenstance.[5]   Hence, the Carrs reliance upon *Baravordeh* affords them no relief.

In sum, the trial court erroneously granted *nunc pro tunc* relief to the Carrs by giving them 85 days in which to appeal the common-law-arbitration award, when the legislature gave them only 30 days.  The trial court lacked jurisdiction to review the arbitration award, absent fraud or a breakdown in the court's operation.  Although a tragic event in the life of their attorney occurred, the Carrs did not provide a sufficient reason for granting *nunc pro tunc* relief.  *See C.K.*, *supra*.  The appeal from arbitration was untimely; thus, we reverse the trial court's grant of *nunc pro tunc* relief and vacate the order

---

[5] To date, neither a four Justice majority nor the General Assembly has ever permitted non-negligent happenstance as a basis for an untimely appeal.

modifying the arbitration award. In addition, we dismiss the parties' other appellate issues as moot.

May 27, 2021 Order granting *nunc pro tunc* relief reversed. February 21, 2024 Order vacated. Appeal number 345 WDA 2024 dismissed.

Case remanded for the entry of an order granting the Bank's petition for entry of judgment in its favor and against the Carrs for $10,245.32.

Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

3/26/2025